# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 1, 2005 Session

## DAVID JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Obion County**
**No. 4-149    William B. Acree, Jr., Judge**

---

**No. W2004-02017-CCA-R3-PC  - Filed June 23, 2005**

---

Petitioner, David Johnson, appeals the dismissal of his *pro se* petition for post-conviction relief. On appeal, Petitioner argues that his trial counsel rendered ineffective assistance of counsel when he failed to interview or call a witness who could have provided an alibi for Petitioner on the night of the offenses. After a review of the record in this matter, we affirm the post-conviction court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Timothy Boxx, Dyersburg, Tennessee, for the appellant, David Johnson.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Jim T. Cannon, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

Following a jury trial, Petitioner was convicted of two counts of attempted premeditated first degree murder, and the trial court sentenced Petitioner to concurrent twenty-five year sentences on each count. This Court affirmed the convictions on direct appeal. *State v. David L. Johnson*, No. W2002-00935-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 826 (Tenn. Crim. App., Sept. 25, 2003). The facts surrounding Petitioner's convictions were summarized as follows (references to "appellant" is a reference to Petitioner).

> On August 6, 2001, the victims, Robbie Upchurch and Reggie Jordan, were shot on the front porch of Mr. Upchurch's home in Union City, Tennessee. Mr. Upchurch was wounded in the leg. Mr. Jordan was shot in the back and is paralyzed below the waist.

Mr. Upchurch and Mr. Jordan testified that at about 10:00 p.m., just prior to the shooting, they drove to Mr. Upchurch's house in a Camaro. They stated that as they approached Mr. Upchurch's house, they saw the appellant in a vehicle with Josh McElrath, Jeffrey Shields, Willie Vaughn, and Mario McElrath. The victims said they first saw the other vehicle at an intersection near Mr. Upchurch's home. According to Mr. Upchurch, the occupants of the other vehicle stared as he turned left toward his home. The victims testified they saw the other car a second time when it traveled past Mr. Upchurch's house on Home Street.

The victims testified they pulled into Mr. Upchurch's driveway, exited the Camaro, and walked onto the porch. Mr. Upchurch stated he then heard three gunshots, the first striking him in the leg. Mr. Jordan said he heard five or six shots, one of which struck him in the back. Neither victim saw the shooter. Mr. Upchurch said he did not know why the appellant would shoot him, but speculated it was because he was "from out of town" and the appellant's girlfriend liked him.

Mario McElrath and Jeffrey Shields testified that on the night of the shooting, they were in the car with the appellant, Willie Vaughn, and Josh McElrath, who was driving. Mario McElrath stated that when they drove past a Camaro, the appellant commented, "There goes [Upchurch]." Both Mr. Shields and Mario McElrath said that when they saw the Camaro traveling on Home Street, the appellant told Josh McElrath to pull over. Both testified Josh McElrath turned left on College Street and stopped near Counce's Grocery Store. They testified everyone exited the car except Josh McElrath, but only the appellant went behind the store.

Mr. Shields stated he saw the appellant jump a fence, and Mario McElrath indicated he heard the appellant scale the fence. Both witnesses said they heard gunshots seconds later. Mario McElrath testified the appellant returned carrying a black automatic pistol that was "about like a nine millimeter," and said, "I shot one of 'em." Mr. Shields confirmed the appellant was carrying a black pistol and stated the appellant said, "Two for one ain't bad."

Sonya Polk and Latasha Buchanan testified they shared a home with Mr. Upchurch. The women stated that at the time of the shooting, they were in the house with six children between the ages of four and ten. According to Ms. Polk, she heard more than four gunshots as she was reading to three of the children in the front bedroom at about 10:00 p.m. Ms. Buchanan indicated she heard more than four shots in rapid succession. Both women confirmed Mr. Upchurch and Mr. Jordan were wounded, but neither of them saw who fired the shots.

Lt. Rick Kelly of the Union City Police Department testified he investigated the crime scene and found evidence indicating at least five rounds were fired. In addition to two nine millimeter shell casings found nineteen feet from the house, he

found bullet holes in the window air conditioner, the rail of the front porch, and the foundation of the house. Lt. Kelly further testified that Mr. Upchurch's house was located next to Counce's Grocery, and there was a fence between the house and the store: According to Lt. Kelly, the appellant gave a statement in which he said that on the night of the offense, he was at home until approximately 10:15 p.m., when he went to a friend's house where "Jeff Shields," "Josh," and another person were watching television. The appellant indicated he heard gunshots in the alley and saw a Camaro driving away.

TBI forensic scientist Terri Arnie testified the two shell casings found by Lt. Kelly at the crime scene came from the same nine millimeter weapon. She also stated that a bullet recovered from the crime scene was a nine millimeter caliber bullet.

*Id.* at *2-5. The Supreme Court denied Petitioner's application for permission to appeal on March 8, 2004.

On appeal, Petitioner contends that his trial counsel's failure to call James Marshall as a witness at trial constituted ineffective assistance of counsel. Petitioner argues that Mr. Marshall could have provided Petitioner with an alibi for the time the offenses were committed, or at least corroborated Petitioner's defense that he was not the shooter.

At the post-conviction hearing, Petitioner said that he arrived at Mr. Marshall's house around 10:00 p.m. on the night of the shootings. He said that Mr. Marshall was on the telephone, and Petitioner waited on the front porch for Mr. Marshall to finish his call. Josh McElrath, Jeffrey Shields, and another individual arrived at Mr. Marshall's house some time after 10:00 p.m. Petitioner said that Mr. Marshall's house was about two blocks from the scene of the crime, and Petitioner did not hear any gunshots that night.

Petitioner said that he told his trial counsel about his alibi witness, but trial counsel did not interview Mr. Marshall. On cross-examination, Petitioner denied that he told his trial counsel that he was in the car with Mario McElrath and Mr. Shields on the night of the shootings.

Petitioner's trial counsel testified that Petitioner did not tell him about Mr. Marshall's potential testimony, and there was no record in his file that Petitioner offered Mr. Marshall's name as a witness. Trial counsel first met with Petitioner the day after the shooting when Petitioner was arraigned in General Sessions Court. Petitioner told him during that meeting that he was in the car with three other individuals. Petitioner said that these three people were armed, but Petitioner did not fire a gun that night.

Trial counsel said that in November, 2002, the district attorney's office extended Petitioner an offer for settlement of the case. Trial counsel relayed the State's offer to Petitioner during a two-hour meeting, and he and Petitioner reviewed all of the State's discovery. Trial counsel gave Petitioner a copy of the file, including the investigatory reports prepared by the Tennessee Bureau of Investigation.

On November 28, 2002, Petitioner told trial counsel that Mario McElrath shot the victims. Petitioner also admitted that he had been at the crime scene that night with four other individuals. Trial counsel said that in all of Petitioner's versions of the night's events, he always admitted to either being in the car with the shooter or at the scene of the offenses.

Mr. Marshall testified at the post-conviction hearing that he was talking on the telephone when Petitioner arrived between 10:10 p.m. and 10:25 p.m. Petitioner waited outside for Mr. Marshall to finish his call, which he did about twenty to thirty minutes later. Mr. Marshall could not see Petitioner while he was talking on the telephone, but Petitioner was standing on the sidewalk when Mr. Marshall went outside. Mr. Marshall heard police sirens from his porch. Mr. Marshall said that his house was three or four blocks from the victims' house, and he did not hear any gunshots that night.

During Mr. Marshall's cross-examination, the following exchange took place:

[STATE]:        And you gave a sworn statement to the Tennessee Bureau of Investigation concerning this crime, didn't you?

[MR. MARSHALL]:  Yes, sir.

[STATE]:        And just looking through parts of it, at one point, you said, "[Petitioner] never told me that he was involved with or did this shooting. If [Petitioner] had told me he was involved, I would not have let him hang out there. [Petitioner] told me, 'If [you all] find the gun, it would not have his prints on it.' [Petitioner] also told me that Mario had a Tech 9 in the car that night." Do you recall making that part of the statement to the TBI?

[MR. MARSHALL]:  I remember talking to the TBI and they asked me if [Petitioner] had a gun.

[STATE]:        Do you recall these other statements I just read?

[MR. MARSHALL]:  I do recall him saying that he didn't – he didn't do the shooting, that if you find the weapon, it wouldn't have his fingerprint[s].

[STATE]:        Do you remember him telling you that someone had a Tech 9 in the car, that Mario had a Tech 9.

[MR. MARSHALL]:  I really can't recall.

The post-conviction court specifically credited the testimony of Petitioner's trial counsel that Petitioner had not told him that Mr. Marshall could provide him with an alibi for the time of the shootings. Moreover, the post-conviction court found that Petitioner failed to show that he was prejudiced by trial counsel's failure to call Mr. Marshall as a witness. The post-conviction court found that even if Mr. Marshall had testified, his testimony would not have established an alibi for Petitioner, and Petitioner had given statements to the police and to his trial counsel that were inconsistent with an alibi defense.

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Therefore, this Court may not re-weigh or re-evaluate these findings nor substitute its inferences for those of the trial judge unless the evidence in the record preponderates against those findings. *State v. Honeycutt*, 54 S.W.3d 762, 763 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). In addition, questions concerning the credibility of witnesses and the weight and value given their testimony is resolved by the trial court, and not this Court. *Burns*, 6 S.W.3d at 461. However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *Burns*, 6 S.W.3d at 461.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Petitioner contends that his trial counsel's assistance was ineffective because he failed to call Mr. Marshall as an alibi witness. Petitioner argues that although trial counsel testified that his file did not contain a reference to Mr. Marshall's potential testimony, he admitted that his file was not complete. This argument is essentially a challenge to the post-conviction court's assessment of the witness's credibility which is properly the province of the post-conviction trial court, not the appellate court. *See Burns*, 6 S.W.3d at 461.

Moreover, the evidence does not preponderate against the post-conviction court's finding that Petitioner failed to establish that he was prejudiced by the failure to call Mr. Marshall as a witness. The victims testified at trial that the shootings occurred when they arrived home around 10:00 p.m. Mr. Marshall, who lived between two and four blocks from the crime scene, said that Petitioner came over to house between 10:10 p.m. and 10:25 p.m. on the night of the shootings. Mr. Marshall did not see Petitioner again until he finished his telephone conversation twenty-five to thirty minutes later. Petitioner initially told his trial counsel that he was in the car with the shooter, and, on a later date, told his trial counsel that he was at the crime scene. Petitioner is not entitled to relief on this issue.

Petitioner argues that his trial counsel's conduct was deficient because he failed to discover Mr. Marshall's statement to the TBI. Petitioner contends that Mr. Marshall's statement would have supported Petitioner's defense that he was not the shooter. The State argues that Petitioner failed to show that he was prejudiced by this omission. Petitioner did not introduce Mr. Marshall's statement into evidence at the post-conviction hearing nor did he show that the statement was among the State's documents that were presented to trial counsel during discovery. In any event, relying on *Hall v. State*, 552 S.W.2d 417, 418 (Tenn. Crim. App. 1977), the State argues that a defendant's self-serving statements are generally inadmissible because there is "nothing to guarantee its testimonial trustworthiness." *See also* Tenn. R. Evid. 803(3).

The topic of Mr. Marshall's statement to the TBI was first introduced during the State's cross-examination of Mr. Marshall. Petitioner's counsel did not pursue the issue on redirect examination. Post-conviction counsel, however, referenced Mr. Marshall's statement in his argument to the post-conviction court after the evidentiary hearing. He contended that the statement was in the TBI file given to trial counsel, and the gist of Mr. Marshall's statement at least corroborated Petitioner's defense that he was not the shooter. The prosecutor replied that he could not say with certainty that Mr. Marshall's statement was given to trial counsel as part of the State's discovery, and the post-conviction court did not address this issue in its findings.

Even assuming that the post-conviction court had found that Mr. Marshall's statement existed in the State's file as alleged by Petitioner, Petitioner did not submit evidence that he was prejudiced or that his trial counsel rendered ineffective assistance of counsel by not obtaining the statement. Petitioner also failed to show how his self-serving statement to Mr. Marshall would have been admissible substantive evidence through Mr. Marshall's testimony. As the post-conviction court found, Petitioner failed to show that Mr. Marshall would have provided an alibi for Petitioner. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a review of the record, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE