IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 18, 2005 Session

## DEXTER L. WILLIAMS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Blount County**
**No. C-9849     Allen W. Wallace, Senior Judge**

---

**No. E2004-01267-CCA-R3-PC - Filed September 7, 2005**

---

Petitioner, Dexter Williams, was convicted of first degree murder and sentenced to life imprisonment. This Court affirmed his conviction on appeal. *State v. Dexter Lee Williams*, No. 03C01-9312-CR-00390, 1995 Tenn. Crim. App. LEXIS 9 (Tenn. Crim. App., at Knoxville, Jan. 9, 1995). A Tennessee Rules of Appellate Procedure Rule 11 application for permission to appeal was filed ten months later, but was dismissed as time-barred. Petitioner's pro se petition for post-conviction relief was also dismissed without a hearing. On appeal, this Court remanded the case for an evidentiary hearing. *Dexter L. Williams v. State*, No. E1999-00871-CCA-R3-PC, 2000 Tenn. Crim. App. LEXIS 22 (Tenn. Crim. App., at Knoxville, Jan. 11, 2000). On appeal to the Tennessee Supreme Court, the State argued that the petition was untimely and should have been dismissed. The Supreme Court affirmed the Court of Criminal Appeals and remanded the case to the trial court for a further evidentiary hearing to determine the circumstances surrounding Petitioner's untimely filing of his post-conviction petition, holding that due process concerns might prevent strict application of the statute of limitations. *Williams v. State*, 44 S.W.3d 464 (Tenn. 2001). Following an evidentiary hearing, the trial court again dismissed the petition for post-conviction relief. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, Dexter L. Williams

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Michael L. Flynn, District Attorney General; Rocky Young, Assistant District Attorney General; and Phillip Morton, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

The Tennessee Supreme Court summarized the extensive procedural history of this case, in pertinent part, in *Williams v. State*, 44 S.W.3d 464 (Tenn. 2001):

In 1993, Dexter Williams, the appellee, was convicted of first degree murder and sentenced to life imprisonment. The Court of Criminal Appeals affirmed his conviction and sentence on January 9, 1995. The record in Williams's direct appeal reflects that on October 18, 1995, approximately nine months after the intermediate court affirmed his conviction, Williams's appointed trial attorney filed a motion to withdraw as counsel pursuant to Tennessee Supreme Court Rule 14. In his motion, counsel stated that after he received notice of the intermediate court's affirmation of the conviction, he "sent a copy of the Opinion along with a cover letter to the Defendant advising [him] of the court's decision and advising that counsel no longer had the authority to represent Appellant to a further court." Counsel also stated that on October 12, 1995, Williams notified him that he never received this letter. Consequently, in this Rule 14 application, counsel stated that he was

> aware that the sixty day time period in which to file permission for application to appeal is not to be extended, however, in that Defendant did not receive proper notice, his due process rights are implicated, and thereby jeopardized. Additionally, since counsel failed to provide a timely Rule 14 notice, counsel would request that this Court grant Appellant an additional time period in which to file his permission to appeal.

The Court of Criminal Appeals denied the motion as untimely.

On November 8, 1995, ten months after the decision of the Court of Criminal Appeals, counsel filed an application for permission to appeal to this Court. Because this application was also untimely pursuant to Rule 11(b) of the Tennessee Rules of Appellate Procedure, this Court, without jurisdiction to consider the merits of the application, denied and dismissed the application for permission to appeal. *See* Tenn. R. App. P. 2 (prohibiting this Court from extending the time for filing an application for permission to appeal prescribed in Rule 11).

Thereafter, Williams filed a *pro se* petition for post-conviction relief on October 24, 1996, asserting fifteen grounds for relief, claiming, among other things, that he was "denied due process and effective assistance of counsel during the appellate process." On November 22, 1996, the trial court filed a preliminary order and, finding

Williams to have made a colorable claim, appointed him an attorney who filed an amendment to the petition. Later, this attorney was allowed to withdraw from the case because his secretary was related to the victim in the original case. New counsel was then appointed, but eventually, pursuant to separate requests by both Williams and the attorney, he was allowed to withdraw as well. The withdrawal order, entered July 16, 1998, also granted Williams his request to represent himself.

The trial court scheduled the post-conviction relief hearing for March 26, 1999. Although the parties appeared in court on that date, Williams testified that he was unable to proceed with the hearing because he never received "the stuff [he] requested for discovery." Moreover, "the witness[es he] requested to have been subpoenaed" to be at the hearing were not there. The trial court then dismissed the petition for failure to present evidence, informing Williams that he could "appeal to the criminal court of appeals and see what they say about all this."

Williams appealed, arguing that because he was not provided a full and fair hearing on his claims for relief, the trial court violated his right to due process of law. The Court of Criminal Appeals agreed that the trial court erred by not granting a continuance and in dismissing the case without an evidentiary hearing. However, [the Court] concentrated its analysis on the statute of limitations as the important issue. It addressed the State's discussion of Williams's failure to timely file his petition and Williams's allegation that such delay stemmed from ineffective assistance of counsel. The [Court of Criminal Appeals] remanded the case to the trial court for a hearing "initially to address the circumstances of the petitioner's direct appeal, of the application for permission to appeal, and of trial counsel's relationship to the application--as all relate to the issue of the statute of limitations. Any further hearing would depend on the trial court's decision on that issue."

[The Tennessee Supreme Court] granted the State's application for permission to appeal.

*Williams*, 44 S.W.3d at 465-67.

The Supreme Court held that, although Petitioner filed his petition for post-conviction relief beyond the statutory deadline, due process considerations might have tolled the limitations period, and therefore the statute could not be strictly applied, without further inquiry, to deny Petitioner the reasonable opportunity to seek post-conviction relief. Accordingly, the Supreme Court affirmed the decision of the Court of Criminal Appeals to remand the case to the trial court for an evidentiary hearing to determine the circumstances precluding Petitioner from filing a timely application. The Court held:

[W]e are simply remanding the case to the trial court for an evidentiary hearing to determine (1) whether due process tolled the statute of limitations so as to give [Petitioner] a reasonable opportunity after the expiration of the limitations period to present his claim in a meaningful manner; and (2) if so, whether [Petitioner]'s filing of the post-conviction petition in October 1996 was within the reasonable opportunity afforded by the due process tolling.

\* \* \*

[On remand,] [i]f the evidence demonstrates that (1) the statute should be tolled, and (2) that [Petitioner] did file his petition within the reasonable opportunity afforded by the due process tolling, thereby allowing [Petitioner] to assert a timely request for post-conviction relief, then the trial court has jurisdiction to determine whether [Petitioner] was deprived of his right to request *pro se* Supreme Court review under Rule 11 of the Tennessee Rules of Appellate Procedure. . . . Subsequently, if the proof establishes that [Petitioner], through no fault of his own, was denied the opportunity of second-tier appellate review, the court shall, pursuant to case law, grant him the opportunity to seek review by [the Supreme Court] on a delayed basis.

*Id.* at 471-72

In accordance with the Supreme Court's holding, the trial court held a hearing on the above-styled issues. At the hearing, the court heard testimony by Petitioner and Kevin Shepherd, who was Petitioner's counsel at trial and on direct appeal. During Petitioner's testimony, he claimed that he never heard from counsel regarding the opinion of the Court of Criminal Appeals of January 9, 1995, which affirmed his first degree murder conviction. He stated that in October of 1995 he contacted counsel "to check on the appeals process in [his] case" Counsel informed Petitioner that he was no longer representing him. According to Petitioner, it was during this conversation that Petitioner first learned that the Court of Criminal Appeals had denied his direct appeal. After their conversation, Petitioner received a copy of a Supreme Court Rule 14 Application for Permission to Withdraw, which his counsel had filed October 18, 1995. Petitioner referred to a "case history list from the Court of Criminal Appeals" and stated that the application to withdraw was denied on October 20. He then stated that it was his understanding that counsel was representing him. Counsel filed a "Rule 11 application" to the Supreme Court and sent a letter to Petitioner, which Petitioner described as "a notification, more or less, where he had sent a response from the State on [my] petition to appeal to the Supreme Court. [Counsel] states 'if they succeed on this issue, then your recourse would be [to] file a petition for post conviction relief." Petitioner stated that after he received this letter from his counsel, he "tried to familiarize [himself] with the statute of limitation and the Post Conviction Procedures Act." He then filed a petition for post-conviction relief "about eight months" after the Supreme Court denied his Tennessee Rules of Appellate Procedure Rule 11 application, which was, according to Petitioner, "well within one year" of the ruling of the Supreme Court.

On cross-examination, Petitioner conceded that "[i]t's possible" that counsel communicated with Petitioner's mother during the appellate process. The State questioned Petitioner about a letter dated January 11, 1995 from counsel to Petitioner's mother in which counsel states that the Court

of Criminal Appeals had upheld Petitioner's conviction. Petitioner admitted that he had seen the letter, but "couldn't be sure who [he] received it from" but that he did not receive it from his mother. The State also questioned Petitioner about a letter Petitioner acknowledged he received from counsel dated March 29, 1995. The State asked Petitioner to read a portion of the letter for the record, but Petitioner refused, claiming he could not read it because he was not "college educated or anything." Petitioner testified that his mother "did not have authority" to assist counsel in the appellate process. On redirect examination, Petitioner read the portion of the January 1995 letter counsel sent to Petitioner's mother which addressed what Petitioner's options were following the decision by the Court of Criminal Appeals: "It says they're limited at this point. He may do nothing, and thus be prepared to serve his sentence, or he may appeal to the Tennessee Supreme Court. Says [sic] unfortunately the court doesn't pay for court appointed attorneys." However, Petitioner stated that he did not "really" have any communication from his mother about his case after the decision of the Court of Criminal Appeals and that his mother did not tell him about the letter from counsel.

Kevin Shepherd testified that, although he is now in private practice, he began representing Petitioner when he worked as an assistant public defender. He left the public defender's office in 1992, but continued representing Petitioner. Mr. Shepherd explained why he communicated with Petitioner's mother:

> When the case first started, we were looking at all of the defenses and the facts around the case, it was disclosed to me by [Petitioner] and the family that he had been treated at Overlook Mental Health Center for years. And that there were some issues there dealing with mental health, educational abilities, and [Petitioner] suffered from organic brain syndrome. So at his request, and the request of his mother, who typically accompanied him–in fact, I don't know that [Petitioner] ever came to my office without–he always had a family member there. So, I was asked to always communicate through his family, to keep them advised. Especially after he was incarcerated, because I couldn't just pick up the phone and call him. The quickest way to relay information would be through his family.

Counsel explained that after Petitioner was incarcerated, he met with Petitioner's family a few times and spoke with them in numerous phone calls. He sent the January 11, 1995, letter to Petitioner's mother "because [he] wanted the family to understand what had happened" and he also sent a similar letter to Petitioner, but he could not find a copy of the letter he sent to Petitioner. Mr. Shepard further explained that after January, Petitioner's mother and Petitioner's fiancee came by his office. They told him that they had received his letter and they understood that the state would not pay him to continue, and they did not wish to hire him. They picked up the transcripts from Petitioner's file. Petitioner sent a letter to Mr. Shepherd's office in March of 1995 "asking that all information, all evidence that I might have, any exhibits, just anything about the case be turned over so that they could have that." Mr. Shepherd responded, in a letter dated March 29, 1995, informing Petitioner that he had already given him everything he had in his possession, but that he would contact the public defender's office, as well. After the records were picked up from his office, he had no more contact with Petitioner until October of 1995, when Petitioner called his office. During their

telephone conversation, Petitioner informed Mr. Shepherd that "he learned while in the penitentiary that the attorney was supposed to file a [Supreme Court] Rule 14 motion. . . . He said since [I] didn't do that . . . it would give him grounds to proceed and I had sold him out by doing that." After the conversation, Mr. Shepherd filed a Supreme Court Rule 14 motion, which was denied. He then filed a motion asking for a delayed appeal.

On cross-examination, Mr. Shepherd explained that, at the time, it was his understanding that the State would not pay appointed attorneys to continue representation in the Supreme Court, although he could not recall who had given him that information. He stated that because Petitioner's mother had told him that they did not wish to continue with his services and he had turned over all of Petitioner's case files, it was his understanding that he was no longer Petitioner's attorney. He admitted that he did not comply with Supreme Court Rule 14 in order to be relieved of representation of Petitioner. As a result, when Mr. Shepherd did file a Supreme Court Rule 14 motion, which stated in part, "in that defendant did not recive proper notice, his due process rights are implicated [sic], and thereby jeopardized." Mr. Shepherd explained that he wrote this statement because "[i]n [his] mind, [he] knew that [Petitioner] knew about the Court of Criminal Appeals [decision], but there was not a technical compliance with Rule 14." Mr. Shepherd explained that he knew Petitioner had received the January, 1995, letter explaining the decision made by the Court of Criminal appeals because Petitioner's mother "told me [Petitioner] had it, and when [Petitioner] corresponded with my office, he was aware of it as well."

Following the hearing, the trial court issued a Memorandum Opinion and Order, in which the court summarized its findings of facts and conclusions of law. The trial court ruled:

It is [Petitioner's] position in this cause, that he did not know nor was he informed of the Court of Criminal Appeals' decision affirming his conviction until October 9, 1995.

Petitioner further insists that he would have one (1) year from the date his Motion for Permission to Appeal to the Supreme Court was denied as untimely filed.

The proof in this cause is overwhelming that the position of [Petitioner] is without merit. The testimony of Kevin W. Shepherd, attorney, who was [Petitioner's] attorney at the time [demonstrated that] the attorney sent a letter dated January 11, 1995, to [P]etitioner's mother advising her of the decision of the Court of Criminal Appeals, and explaining [P]etitioner's rights. He further testified that [P]etitioner's mother had been active in the trial phase, always coming to the attorney's office with [Petitioner]. Further, [P]etitioner's mother and girlfriend had come to his office after the letter of January 11, 1995, and picked up various materials for [P]etitioner, including the transcript. On March 29, 1995, the attorney sent [P]etitioner a letter, in response to [P]etitioner's letter to him. . . . In that letter [P]etitioner was advised that his family, at his instructions, retrieved the transcript in this case.

[Neither] Petitioner's mother, nor any other member of [P]etitioner's family, was called as a witness in this cause.

Petitioner denied he received Mr. Shepherd's letter dated March 29, 1995, nor did he receive any information from his mother nor anyone else.

After observing [P]etitioner and listening to him testify, his credibility is extremely suspect to the Court. It is obvious to the Court that [Petitioner] is knowledgeable of the procedures, and he applies selective memory to avoid compliance with rules of procedure in his post conviction application.

Petitioner's position that an application for permission to appeal would allow him an additional year after the Court's decision is not reasonable. As insisted by the State, such procedure would simply allow a person to avoid the Statute of Limitation [sic] in many cases, and is certainly not the legislative intent.

Petitioner's petition for post conviction is, therefore, untimely filed and is dismissed.

## II. Analysis

Neither Petitioner nor the State disputes that Petitioner failed to file his petition for post-conviction relief within the time period allowed by the plain meaning of the 1995 Post-Conviction Procedure Act. *See* Tenn. Code Ann. §§ 40-30-201 to -310. The Act provides a period of one year, measured from the date of the final action of the highest state appellate court to which an appeal is taken, in order to file a petition for post-conviction relief, which in Petitioner's case would be one year from January 9, 1995–the date this Court affirmed his conviction. § 40-30-202(a); *Williams*, 44 S.W.3d at 467-68. However, because the Act was not enacted until May 10, 1995, Petitioner had one year after that date, in which to file his petition. *See* 1995 Tenn. Pub. Acts ch. 207, § 3 (stating that "notwithstanding any other provision of this part to the contrary, any person having ground for relief recognized under this part shall have at least one (1) year from May 10, 1995, to file a petition . . . under this part"); *Williams*, 44 S.W.3d at 468. Petitioner did not file his petition until October 24, 1996, and thus failed to seek timely post-conviction relief under a strict application of the statute.

The Supreme Court, however, was concerned that "a strict application of the statute in this case could have [the] effect" of denying Petitioner "a reasonable opportunity to assert a claim in a meaningful time and manner" because Petitioner "might have been denied the opportunity to challenge his conviction in a timely manner through no fault of his own but because of the possible misrepresentation of his counsel." *Williams*, 44 S.W.3d at 468; *see also Seals v. State*, 23 S.W.3d 272, 279 (Tenn. 2000). Petitioner argues that he was, in fact, deprived of a fair opportunity to seek redress due to the failings of his trial counsel, and therefore the trial court erred by dismissing his petition for post-conviction relief as untimely. The State argues that the trial court properly held that Petitioner is not entitled to a tolling of the statute of limitations. Furthermore, the State argues that

the filing of the petition in October 1996 was not within the reasonable opportunity afforded by any due process tolling of the statute of limitations.

The trial judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court's findings of fact are afforded the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial judge. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this Court. *Burns*, 6 S.W.3d at 461. The burden of establishing that the evidence preponderates otherwise is on Petitioner. *Henley*, 960 S.W.2d at 579. However, the trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Petitioner testified that he was unaware that his attorney had not filed a Tennessee Rules of Appellate Procedure Rule 11 application after his conviction was affirmed by the Court of Criminal appeals. The trial court did not credit his testimony. The attorney's January 11, 1995, letter to Petitioner's mother stated:

> Regretfully, I must inform you that the Court of Criminal Appeals has upheld [Petitioner's] conviction. We received their opinion today, which I have enclosed for your benefit.
>
> [Petitioner's] options are limited at this point:
> 1. He may do nothing and will thus be required to serve his sentence, or
> 2. He may appeal to the Tennessee Supreme Court.
>
> Unfortunately, the Court will not pay for court-appointed attorneys for the Supreme Court. Thus, if he wants to appeal, he must file a Petition to rehear within 10 days, and then an Application to Appeal within 30 days after a decision is made on Rehearing.

The attorney testified that he sent a similar letter to Petitioner, although he was unable to produce a copy of the letter at the hearing. Regardless, the trial court credited the attorney's testimony that Petitioner's mother was very active in Petitioner's trial, and that communicating through her was a regular occurrence. Shortly after receiving this letter, Petitioner's family arrived at the attorney's office and retrieved Petitioner's transcripts, informing him that they did not intend to continue with his services. Of course, counsel's statement that the state will not pay for court-appointed attorneys is erroneous. According to section 1 of Supreme Court Rule 13, appointed counsel continues to act for a defendant "throughout the proceedings, including appeals, until the case has been concluded or counsel has been allowed to withdraw by the court." Appointed attorneys are entitled to

reasonable compensation for their services rendered, including services rendered in the Tennessee Supreme Court. Tenn. R. S. Ct. § 2. Appointed counsel may request permission to withdraw as counsel for an indigent defendant after an adverse final decision in the Court of Criminal Appeals and before preparation and filing of an Application for Permission to Appeal in the Supreme Court by filing a motion with the Clerk of the Court of Criminal Appeals within fourteen days of that court's final judgment. Tenn. R. S. Ct. 14. In addition, Petitioner would have been required to file an application for permission to appeal the decision of the Court of Criminal Appeals within sixty days after the entry of the judgement of the Court of Criminal Appeals if he did not file a petition for rehearing, or, within sixty days after the denial of the petition to rehear. Tenn. R. App. P. 11(b). Counsel's statement that Petitioner would only have thirty days was also erroneous.

Petitioner testified that he received a copy of his attorney's Supreme Court Rule 14 motion for permission to withdraw as counsel, which was filed on October 18, 1995. Included in this motion was a request "to grant [Petitioner] additional time in which to perfect his application for permission to appeal, if one is so desired by [Petitioner]." This motion was denied, but an untimely Tennessee Rules of Appellate Procedure Rule 11 Application was filed anyway. Although Petitioner further testified that in December of 1995 he "tried to familiarize [himself] with the statute of limitations and the Post[-]Convictions [sic] Procedures [sic] Act," he insists that his petition for post-conviction relief was timely because it was "well within one year" of the Supreme Court's denial of the untimely Tennessee Rules of Appellate Procedure Rule 11 Application.

Petitioner relies on *State v. Evans*, 108 S.W.3d 231 (Tenn. 2003) for his assertion that this Court, pursuant to Tennessee Supreme Court Rule 28, may grant a delayed second-tier appeal as a remedy for post-conviction relief. The Petitioner in *Evans*, however, timely filed his petition for post-conviction relief, and was then granted permission to file a delayed Application for Permission to Appeal to the Supreme Court. In the case *sub judice*, it is apparent from the record that Petitioner's failure to file his post-conviction petition within the time allowed under the statute of limitations was a result of his own misunderstanding the Post Conviction Procedure Act. It was not a result of his attorney's incorrect advice in the January 11, 1995, letter. We agree with the trial court's conclusion that Petitioner's petition for post-conviction relief should be dismissed as untimely.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE