IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 13, 2021

## JAMES DOMINIC STEVENSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 16-CR-11    M. Wyatt Burk, Judge**

_____

**No. M2020-00134-CCA-R3-PC**

_____

The Petitioner, James Dominic Stevenson, was convicted by a jury of attempted first degree murder, three counts of aggravated assault, and reckless endangerment with a deadly weapon after he shot his ex-girlfriend in her car in the presence of her child. His aggravated assault convictions were merged into the attempted first degree murder conviction, and he received an effective twenty-seven-year sentence. The Petitioner filed for post-conviction relief, asserting that he received ineffective assistance from his trial counsel, and his petition was denied after a hearing. On appeal, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

John M. Schweri, Columbia, Tennessee, for the appellant, James Dominic Stevenson.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Robert J. Carter, District Attorney General; and William Bottoms and Drew Wright, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

### Trial

At trial, the State presented physical evidence, including bullet casings, broken glass, blood spatter, and medical testimony that the victim, Ms. Dixie Matthews, had been shot in the jaw. The victim testified the Petitioner shot her after she drove to a parking lot to meet him, and she positively identified the Petitioner as the shooter, noting that she had been romantically involved with him, that she was able to both see him clearly and recognize his voice when he entered her vehicle, and that she was absolutely certain he was the assailant. *State v. James Dominic Stevenson*, No. M2017-01514-CCA-R3-CD, 2019 WL 1375349, at *2 (Tenn. Crim. App. Mar. 26, 2019), *perm. app. denied* (Tenn. July 18, 2019). The defense tried to introduce reasonable doubt by arguing that the evidence established that the victim and the Petitioner had never set a location to meet by text, that the victim could not have communicated other than by text because her cell phone was malfunctioning, and that therefore the Petitioner could not have been the shooter.

The victim had been romantically involved with the Petitioner, but the relationship soured, and the victim obtained a restraining order against the Petitioner in March 2015. *Id.* at *1. However, they continued to see each other until around the end of August 2015. *Id.* Prior to the shooting, the Petitioner discovered through social media that the victim had announced a pregnancy, and he contacted her on September 4, 2015. *Id.* The appellate opinion on direct review gave the following summary of the communication between the victim and the Petitioner:

> The [Petitioner] contacted [the victim] again on the morning of September 5 by text message, asking whether he was the father of [the victim's] unborn child. [The victim] testified that she communicated with the [Petitioner] via telephone calls and by text messages on September 5.
>
> A series of text messages from September 4 and 5 between [the victim] and the [Petitioner] were exhibited to [the victim's] testimony and shown to the jury. [The victim] explained that during the time of those text messages, she was in the process of moving from Lewisburg to Lawrenceburg. During a text message conversation on September 5, [the victim] stated that her "iPhone almost had it[;] it keeps blacking out and [the] spe[a]ker quit working." Later, in that same text message conversation, the [Petitioner] asked whether he could "see [the victim's

toddler son]" that night, to which [the victim] responded, "Yea when we get back to [L]ewisburg[.]" At approximately 9:55 p.m., [the victim] and the [Petitioner] had the following conversation via text messages:

> [The victim:] We coming into [L]ewisburg now[.]
> [The Petitioner:] I'll be ready[.]
> [The victim:] K give us about 5 minutes[.]
> [The Petitioner:] Ok[.]

> [The victim] testified that she also had a telephone conversation with the [Petitioner] during the same period that they were text messaging each other, and the [Petitioner] told her that "he was over at his friend's house" and that she should meet him at the Marshall County Plaza ("the Plaza")….

> …

> On cross-examination, [the victim] testified that the telephone she had used to communicate with the defendant was an AT&T iPhone. She agreed that everything she had stated in her text messages to the [Petitioner] was true and accurate and that the text messages exhibited to the jury were all of the messages sent between the [Petitioner] and her. She estimated that she and the [Petitioner] had also communicated by telephone "about three or four times" the night of September 5 and that the [Petitioner] had initiated each of those calls.

*Id.* at \*1-3.

When the victim arrived in the parking lot of the Plaza on September 5, 2015, the Petitioner got into her car and hit her in the head with a hard object. *Id.* at \*2. The victim saw a gun in the Petitioner's pocket, and she told him to get out of the vehicle. *Id.* The Petitioner stepped out of the vehicle, and he proceeded to shoot the victim in the jaw. *Id.* The victim attempted to drive off but stopped the car to retrieve her cell phone when it fell on the car floor. *Id.* While the car was stopped, the Petitioner opened the passenger's side door, grabbed the cell phone, and ran into the bushes. *Id.* The Petitioner then fired a second shot at the vehicle. *Id.*

The victim acknowledged at trial that she had been arrested for theft of a credit card and was on probation at the time of trial. *Id.* at \*1. The victim testified that she did not perceive the text messages from the Petitioner as threatening. She also testified that she had not been threatened by anyone else the night of the shooting. The State objected

- 3 -

to any further questioning on the issue of third-party threats, and trial counsel did not pursue further questioning.

Detective Santiago McKlean testified that he did not obtain the call log from the victim's cell phone but that he did subpoena the records from the service providers for both the victim's and Petitioner's cell phones. "[H]e stated that he had no evidence of telephone calls between the [Petitioner] and [the victim] other than [the victim's] statement to that effect." *Id.* at *3. Trial counsel attempted to ask Detective McKlean about the records from the service providers, in particular whether the times reflected on the records were in Coordinated Universal Time ("UTC") or Central Time, but the trial court excluded the testimony, ruling that someone from the cell phone service provider would have to testify in order to interpret the records. Trial counsel entered the records, which indicated that the times were recorded in UTC, as an offer of proof.

The jury convicted the Petitioner of attempted first degree murder of the victim, three counts of aggravated assault charged by alternative means, and reckless endangerment of the victim's son with a deadly weapon, and the trial court merged the aggravated assault convictions into the attempted first-degree murder conviction. *Id.* The Petitioner was sentenced to serve twenty-seven years in prison. *Id.* His application for permission to appeal was denied by the Tennessee Supreme Court. *State v. James Dominic Stevenson*, No. M2017-01514-CCA-R11-CD (Tenn. July 18, 2019) (order).

## Post-Conviction

The Petitioner filed for post-conviction relief, raising twenty-one claims for relief, including that trial counsel provided ineffective assistance by: (1) failing to procure DNA testing of the victim's cell phone; (2) failing to obtain the location service records for the Petitioner's cell phone or procure an expert to analyze them; (3) failing to interview the victim; (4) failing to investigate threats received by the victim from a third party; and (5) failing to develop a defense.

At the hearing, trial counsel testified that he visited the Petitioner three to five times in jail and met with him on court dates. Trial counsel reviewed the discovery, including the victim's medical records, and he felt adequately prepared for trial. Trial counsel testified that the State's evidence was strong because the victim had clearly suffered a gunshot wound and because she unequivocally identified the Petitioner, with whom she had had a relationship, as the shooter. The Petitioner filed a bar complaint against trial counsel, and trial counsel moved to withdraw prior to trial, but he felt that he maintained a good relationship with the Petitioner during trial.

- 4 -

Trial counsel did not request fingerprint or DNA analysis of the cell phone or the cartridge casings. He testified that the victim's phone had been left in the elements for a period of time after the shooting and that he accordingly believed there was a low chance of finding any DNA on it.

Trial counsel did not recall a search warrant for the Petitioner's cell phone, but he recalled that the proof introduced by the State was actually taken from the victim's cell phone. Trial counsel subpoenaed the records for the Petitioner's cell phone from his cell phone service carrier, but he did not specifically ask for the cell phone locator service records. Trial counsel testified that he had asked the Petitioner about a possible alibi and that the Petitioner had "directed [trial counsel] not to go down that path." The Petitioner never told trial counsel that he was out of the state at the time of the shooting.

Trial counsel testified that the records from the cell phone carrier were not accurate for Central Time Zone because the records indicated time in UTC. Trial counsel attempted to introduce proof regarding the correct times, but the State objected that such proof required expert testimony. Because the court agreed with the State, trial counsel made an offer of proof regarding the evidence.

Trial counsel acknowledged that he had not interviewed the victim prior to trial but noted that he had reviewed the victim's preliminary hearing testimony. He stated that he prepared for trial with the victim's audio recorded testimony and that this source provided the information he needed for the cross-examination of the victim. He tried to cross-examine the victim with inconsistencies between her preliminary and trial testimony, but the State's objections to his questions were sustained. He did not review the preliminary hearing with the Petitioner or have it transcribed.

Trial counsel did not object to the introduction of the text messages from the victim's cell phone because he felt they supported the theory of the defense. The victim testified at trial that she and the Petitioner had phone conversations prior to the shooting, but the text messages reflected that the speaker on her cell phone was not functioning. The text messages never specified a meeting place. Trial counsel asked the victim both if everything contained in the texts was true and if her cell phone was the only phone she used, and she answered in the affirmative to both questions. Trial counsel recalled that Detective McKlean testified that there were no calls between the two cell phones on the date of the offense. Trial counsel's strategy was to cast reasonable doubt on the Petitioner's identity by arguing to the jury that the victim and Petitioner never agreed to a meeting place either by text or by telephone and that the Petitioner, therefore, could not have been the shooter. Trial counsel testified that he avoided further questioning the victim about the broken speaker because he did not want to give the victim an

opportunity to provide an explanation regarding how any meeting spot was communicated.

The victim had made a claim around the time of trial that she was pregnant when she was not. Trial counsel stated that it was not clear if this claim was an intentional misrepresentation and that he did not attempt to introduce it at trial. He elaborated that he did not want to impair the credibility of the defense with the jury by attacking a victim who had clearly suffered a serious gunshot wound. Trial counsel did not recall any contradictions in the victim's testimony regarding how she got to the hospital in Nashville.

The victim had stolen a credit card close in time to the shooting. Trial counsel filed a motion to ensure that the evidence would be admissible. However, the State introduced the conviction during its case-in-chief in order to minimize its impact. Trial counsel testified that "a third party" had told the victim that the owner of the stolen credit card was "going to come and get her." He agreed that the victim had "brought up another name of someone sending a threatening message" to her at the preliminary hearing. Trial counsel did not attempt to interview the person who threatened the victim. He tried to introduce the information during cross-examination, but he stated that the trial court sustained an objection to the evidence.

The Petitioner testified that his first attorney quit private practice and that trial counsel advised him to take a twenty-two-year plea offer when they first met. Trial counsel met with the Petitioner three times in jail. The Petitioner complained to the Board of Professional Responsibility about trial counsel and asked trial counsel to withdraw because trial counsel was not communicating with him adequately. Trial counsel did not review the preliminary hearing testimony with the Petitioner.

The Petitioner asked trial counsel about DNA proof, but trial counsel told him that the DNA proof did not matter because the victim had identified the Petitioner. Trial counsel did not obtain DNA testing or ballistics testing. The Petitioner acknowledged on cross-examination that he had been in a relationship with the victim. Asked if it was possible that his DNA had been deposited on the victim's belongings through their acquaintance and if finding such DNA would have been inculpatory, he stated he was unsure.

The Petitioner stated that his first attorney had told him to produce his cell phone so that they could try to use location services to pinpoint his location at the time of the shooting. However, trial counsel never obtained location service records. The Petitioner testified that trial counsel never mentioned the possibility of alibi proof until ten days before trial. He stated he was out of the state on labor day weekend and first heard of the

shooting when his mother told him he was accused of shooting "somebody." The Petitioner clarified that he was not out of the state but in Marshall County on the night of the shooting.

According to the Petitioner, the victim's testimony was inconsistent with her preliminary hearing testimony in that she had testified that she was in an ambulance at the preliminary hearing but stated at trial that she was moved via life flight. He stated that he never spoke with the victim on the phone on September 4th or 5th. Instead, the victim was released from jail and came to see him on September 3rd. The Petitioner speculated that the "motive behind" the victim's accusing him of shooting her was that she was angry either that he had a date with another woman on the night of September 3rd or that he denied being the father of her unborn child.

The Petitioner testified that the woman whose credit card was stolen by the victim threatened the victim about thirty to forty-five minutes prior to the shooting. Trial counsel never investigated this threat.

The post-conviction court denied relief on all claims. Pertinent to the issues raised on appeal, the post-conviction court found that the Petitioner had not established prejudice regarding trial counsel's failure to request DNA testing or location service records because the Petitioner had not introduced any proof at the post-conviction hearing regarding what trial counsel would have discovered. Furthermore, the Petitioner did not provide any alibi and instructed trial counsel not to pursue an alibi defense. The post-conviction court found that trial counsel was not deficient in failing to interview the victim, failing to challenge her credibility, or failing to pursue the third-party threats because trial counsel challenged the victim's credibility on cross-examination. The court denied each of the claims raised in the petition for failure to establish either deficiency or prejudice. The Petitioner appeals.

**ANALYSIS**

The Petitioner asserts that counsel provided ineffective assistance when he: (1) failed to procure DNA testing; (2) failed to obtain cell phone records and an expert to interpret them; (3) failed to interview the victim; (4) failed to investigate threats received by the victim from a third party; and (5) failed to investigate defenses or to retain "a single expert." We conclude that the Petitioner is not entitled to post-conviction relief.

Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing

evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witnesses, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.*

Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Deficiency requires showing that counsel's errors were so serious "'that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 687). To demonstrate deficiency, the petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). Courts must make every effort "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 689). "'[A] reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). In evaluating counsel's performance, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 690-91). The reviewing court must begin with the presumption "that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson v. State*, 453 S.W.3d 386, 393 (Tenn. 2014).

In determining prejudice, the post-conviction court must decide whether there is a reasonable probability that, absent the errors, the result of the proceeding would have

been different. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Honeycutt*, 54 S.W.3d 762, 768 (Tenn. 2001) (quoting *Strickland*, 466 U.S. at 694). The petitioner must show that the deficiency deprived him of a fair trial and called the reliability of the outcome of the proceeding into question. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

## A. DNA Testing

The Petitioner asserts that trial counsel should have obtained DNA testing of the victim's cell phone to show that he was not the shooter. Trial counsel testified that he did not obtain testing because the cell phone had been exposed to the elements for a period of time. The Petitioner acknowledged at the post-conviction hearing that he had been in a relationship with the victim. The victim testified at trial that the two had continued to see each other until close to the time of the shooting, and she positively identified the Petitioner, with whom she was intimately acquainted, as the person who shot her. The Petitioner has not adduced any evidence regarding what DNA testing would have shown or what testimony an expert in DNA analysis would have given. We conclude that the Petitioner has not established prejudice. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

## B. Cell Phone Evidence and Experts

The Petitioner also asserts that trial counsel was deficient in failing to obtain evidence regarding his cell phone location at the time of the shooting. The cell phone records included in the record from trial contain a "Cell Location" column. The Petitioner has not presented any testimony at the post-conviction hearing to demonstrate what the cell phone location records would have shown, and accordingly, he has not established prejudice. *See id*. We note that the Petitioner testified that he was in Marshall County on the night of the shooting and that trial counsel testified at the post-conviction hearing that he asked the Petitioner if he could provide alibi proof, and the Petitioner instructed him "not to go down that path."

The Petitioner also asserts on appeal that trial counsel was deficient in failing to obtain an expert to clarify the time zone reflected in the cell service carrier records or in failing to ask for judicial notice of the time zone change. These claims were not included in the written post-conviction petition or decided by the post-conviction court, and they are accordingly waived. *See Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) ("Tennessee appellate courts may only consider issues that were not formally raised in

the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection."). In any event, the Petitioner presented no witnesses to establish what the expert testimony on time zones would have been, *see Black*, 794 S.W.2d at 757, and he has articulated no way in which the time zone evidence affected the verdict, *see Berry v. State*, 366 S.W.3d 160, 172 (Tenn. Crim. App. 2011).

### C. Failure to Interview the Victim

The Petitioner also asserts that trial counsel provided ineffective assistance by not interviewing the victim. Trial counsel testified that he did not interview the victim but that he knew what her testimony would be from reviewing the preliminary hearing testimony, that he was able to obtain the information he needed from her preliminary hearing testimony, and that he used her prior testimony to impeach her. The Petitioner does not articulate how an interview with the victim prior to trial would have affected the outcome of the proceedings. *See Berry*, 366 S.W.3d at 172 (denying relief when the petitioner failed to allege any fact that might constitute prejudice). We conclude that the Petitioner has not established deficiency or prejudice.

### D. Failure to Investigate Threats

The Petitioner also asserts that trial counsel performed deficiently by not investigating the threats made against the victim shortly before the shooting. Trial counsel testified that a third party told the victim that the owner of the stolen credit card was "going to come and get her." Trial counsel acknowledged that he did not attempt to interview the person who threatened the victim. He testified that he tried to introduce the information during cross-examination, but the trial judge sustained an objection to the evidence. At the hearing, no evidence was introduced regarding the threat or what counsel's further investigation would have uncovered. *See Black*, 794 S.W.2d at 757. Accordingly, the Petitioner has not shown prejudice.

### E. Failure to Investigate Defenses or Retain Experts

The Petitioner generally claims that trial counsel failed to "investigate defenses" or retain "a single expert." Because the Petitioner has not articulated what specifically trial counsel should have done in this regard, and because he has not presented the testimony of any experts to allow an evaluation of prejudice, he has not established deficiency or prejudice and is not entitled to relief. *See id*.

**CONCLUSION**

Based on the foregoing analysis, the denial of post-conviction relief is affirmed.


_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE