# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 10, 2012

## RICKEY DICKERSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 04-02309      Lee V. Coffee, Judge**

---

**No. W2011-00676-CCA-R3-PC - Filed November 27, 2012**

---

The petitioner, Rickey Dickerson, was convicted of two counts of second degree murder. He filed a post-conviction petition, alleging that his counsel was ineffective in failing to request a continuance and in failing to consult more thoroughly with the petitioner prior to trial. The post-conviction court denied the petition, finding neither deficiency nor prejudice. After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J.,delivered the opinion of the Court,in which ALAN E.GLENN and CAMILLE R. MCMULLEN, J.J., joined.

James P. DeRossitt IV, Memphis, Tennessee, for the appellant, Rickey Dickerson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner's convictions stem from a shooting following a bar fight. As summarized by the court on direct appeal, in October 2003, the petitioner and a co-defendant, Jermaine Harris, were involved in an altercation at a nightclub in Memphis with the two victims, brothers Samuel and Carlmarlos White. *State v. Dickerson*, No. W2008-00301-CCA-R3-CD, 2009 WL 1219105, at *1 (Tenn. Crim. App. May 04, 2009). Because the co-defendant had been antagonistic toward club employees and patrons earlier in the evening, he and the petitioner were removed from the club while the victims remained inside. *Id.* at *2-4. However, one of the victims, Samuel White, then went out a side door

and continued the fight outside the club. *Id.* at *2-3, 5.

There were several witnesses who gave conflicting evidence regarding the events around the actual shooting. Melvin Wordlaw testified that, as the co-defendant and the victims were fighting, he saw a man with dreadlocks (the petitioner's hairstyle) approach the fight, heard a shot, saw that Samuel White had been shot, and saw the co-defendant and the man with dreadlocks run away. *Id.* at *2. While he identified the petitioner from a photographic array, he acknowledged that it was possible there was another man with dreadlocks outside the club and admitted he did not see a gun being fired. *Id.* Edward Luckett testified that he heard two gunshots, ran outside, and saw Samuel White's body in the street and the petitioner standing on the curb with a gun in his hand. *Id.* at *3. He acknowledged he did not see the gun being fired. *Id.* He testified the petitioner ran away and he heard more shots and found Carlmarlos White shot at a nearby location. *Id.* He also picked both men out of a photographic array. *Id.* Montrella Hassell testified that he witnessed a tall, slim man with dreadlocks pull out a gun and shoot Samuel White. *Id.* The man dropped the gun, a man matching the co-defendant's description picked it up, and the two ran away. *Id.* Carlmarlos White, seeing his brother's body, ran after them. *Id.* On cross-examination, the witness acknowledged being unable to identify the two men from a photographic array, and inconsistencies in his statement to police were brought out, including that he had stated that the gunman had either dreadlocks or braids and that he had not mentioned the co-defendant picking up the gun. *Id.* at *4.

Two witnesses who were acquaintances of the victims testified for the petitioner. Latasha Harwell testified that Samuel White and the co-defendant were fighting outside, the fight was broken up, and the co-defendant returned and pulled out a gun. *Id.* at *5. The petitioner was not far behind him. *Id.* The witness ran back in the club and heard shots fired. *Id.* She picked the co-defendant out of a photographic array as the man with the gun. *Id.* Latoya Williams was also outside during the fight, and saw the co-defendant approach Samuel White and pull out a gun, she saw the "backfire" when the co-defendant shot the gun. *Id.* She acknowledged that in her statement to police, she had said she did not see a weapon and that her view of the gunman was obscured by the victim. *Id.*

Lieutenant Mark Miller of the Memphis Police Department testified that he interviewed the co-defendant four days after the incident and that the co-defendant admitted to shooting one victim, the "big guy" or Carlmarlos White, while the victim was attacking him. *Id.* at *4, 11. Both victims had blood alcohol levels above the legal limit and were shot with the same gun. *Id.* at *1.

At trial, the petitioner testified that his only role in the events was to try to restrain the

co-defendant during the altercations. *Id.* at *6. He stated he was walking to his car when he realized the co-defendant was not with him and heard a shot. *Id.* He stated that he then returned to the club and saw the body. *Id.* The co-defendant was not acting like himself, so the petitioner left with a couple he knew. *Id.*

The co-defendant did not testify. *Id.* at *6. The petitioner was convicted of two counts of second degree murder, whereas the co-defendant was convicted of reckless homicide as to Samuel White and voluntary manslaughter as to Carlmarlos White. *Id.* at *6 n.3. The petitioner was sentenced to twenty-two years' incarceration for each count, to be served concurrently.

The petitioner filed an appeal, challenging the admission of certain photographs, instructions on criminal responsibility, and the sufficiency of the evidence. This court noted that the co-defendant had been convicted of lesser included offenses, but stressed that the appeal did not involve the co-defendant. *Id.* at *6 n.3. The court ultimately concluded that the evidence was sufficient to support the convictions under either a theory of direct responsibility or a theory of criminal responsibility for the co-defendant's actions. *Id.* at *11. The petitioner filed a timely post-conviction petition, was appointed counsel, and filed an amended petition. The amended petition contends that the petitioner was denied the effective assistance of counsel due to 1) counsel's failure to request a continuance; 2) counsel's failure to meet with the petitioner and afford him an opportunity to assist with the defense; and 3) counsel's failure to raise as an issue on appeal inconsistencies between the petitioner's conviction and that of the co-defendant.

At the post-conviction hearing, the petitioner testified that his first attorney left the region and his trial attorney was appointed only two months prior to the time his case was set for trial and was working on his case for eight months total. However, he ultimately acknowledged that his attorney may have been appointed in early September 2006 and that although his case was set for trial in February 2007, the trial did not actually take place until late August 2007. The petitioner testified that his counsel met with him only once in prison prior to trial, for about thirty minutes, and that he was not aware what his trial counsel's strategy would be. He testified that he met with his counsel on about three other occasions in a holding cell when he was in court. He testified that he also met with an investigator, who reviewed witness testimony with him. The petitioner testified in depth regarding the facts underlying his convictions and reiterated that he was innocent of the crimes. The petitioner testified that he received no plea offer from his attorney.

The petitioner averred that he chose to testify at trial because his trial counsel advised him to do so and that he did not regret testifying at trial. However, he was dissatisfied with

trial counsel's failure to emphasize on appeal the fact that he was convicted of two counts of second degree murder, while his co-defendant, who had confessed to one shooting, was only convicted of reckless homicide as to Samuel White and voluntary manslaughter as to Carlmarlos White.

On cross-examination, he acknowledged that his main complaint was that he was convicted of a crime he did not commit. The post-conviction court then questioned the petitioner, and the petitioner stated that he had not given his trial counsel the names of any potential witnesses and that he had not complained to the trial court regarding his counsel. He stated that his first attorney had not requested an investigator but trial counsel did. The petitioner stated that trial counsel should have let the co-defendant's case "play out first." He acknowledged that he did not know what benefit additional time would have been but stated trial counsel might have developed a better strategy.

Trial counsel testified that he was appointed after the petitioner's prior counsel left town and that the case was already about two years old at the time. He testified that the prosecutor essentially copied the entire file for him and that he had everything he needed from day one. He testified that he visited the petitioner two or three times in jail close to trial and discussed potential strategies with him and that he also conveyed a plea offer to the petitioner. Trial counsel testified that the investigator interviewed all the witnesses thoroughly and recorded the interviews and that she visited the petitioner to ascertain if he had other witnesses. Trial counsel's opinion was that the case lent itself to a self-defense theory such as that adopted by the co-defendant, but he did not pursue that theory because the petitioner maintained that he had nothing to do with the crime. He testified he thought the trial was going well at the close of the State's proof and that the petitioner's witnesses both identified the co-defendant as firing the gun. Trial counsel testified that he "begged [the petitioner] not to testify" for an hour. Although the petitioner's testimony did not go very well, trial counsel still felt that the petitioner "had a good shot" and was surprised by the result. Trial counsel was approached after the trial by a juror who felt remorseful regarding the verdict on one of the counts. Trial counsel researched the issue but concluded he had no legal argument to raise regarding extraneous prejudicial information.

Trial counsel testified that he addressed the sufficiency of the evidence on appeal. He also testified he argued regarding the inconsistencies in judgments, though "[n]ot in so many words." Trial counsel testified that the petitioner did not give him the names of any other witnesses and that the investigator found the witnesses whom the petitioner put on at trial.

The post-conviction court found that trial counsel's performance was not deficient, citing the fact that trial counsel had succeeded in getting the State's witnesses to equivocate regarding the petitioner's identity and that trial counsel had located two witnesses who testified that the co-defendant was the shooter. The post-conviction court credited trial counsel's testimony that he had attempted to get the petitioner to support a self-defense theory and had begged him not to testify. The post-conviction court also credited trial counsel's testimony that he saw the petitioner multiple times and conveyed a plea offer. The post-conviction court found that trial counsel met with the petitioner, discussed strategy with him, and was prepared for trial; moreover, the post-conviction court found that the petitioner had introduced no evidence that trial counsel should have pursued a different defense strategy and that the petitioner could show no prejudice. The post-conviction court further found that trial counsel had an adequate period of time, almost a year, to prepare for trial, and that there was no evidence of deficiency or prejudice from any failure to ask for a continuance. The post-conviction court rejected the petitioner's theory that trial counsel was deficient in failing to raise the inconsistency of the verdicts against the petitioner and his co-defendant on appeal, concluding that the issue was raised and had been previously determined on direct appeal.

The petitioner appeals, contending that his trial counsel's performance was deficient 1) because trial counsel did not request a necessary continuance and 2) because trial counsel did not meet with the petitioner and the defense was mounted without meaningful input from the petitioner. While the petitioner does not raise the disparity of the verdicts between himself and his co-defendant as a separate ground for relief, he does argue that "in light of that inconsistency," the court should conclude he received the ineffective assistance of counsel.

## Analysis

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *Nichols v. State*, 90 S.W.3d 576, 586 (Tenn. 2002). The appellate court does not reweigh or reevaluate the evidence underlying factual questions, and the trial court determines the credibility of witnesses and weight to be given their testimony. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo with no presumption of correctness on appeal. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). A claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001).

Tennessee Code Annotated section 40-30-103 (2010) provides for post-conviction relief when the petitioner's conviction or sentence is void or voidable due to the violation of a state or federal constitutional right. A petitioner must prove the allegations of fact in a post-conviction petition by clear and convincing evidence. T.C.A. § 40-30-110(f).

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right is the right to the reasonably effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and counsel's performance should fall within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to show that he was denied the right to counsel, a petition must show both that his counsel performed deficiently and that the deficiency was prejudicial to the defense. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). Deficiency is established when counsel's performance falls below an objective standard of reasonableness under prevailing professional norms. *Id.* Prejudice requires showing a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* Because the petitioner must show both deficiency and prejudice, a failure to prove either is fatal to the petition. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

We conclude that, under the standards delineated above, the petitioner has failed to show that he is entitled to relief. The evidence does not preponderate against the post-conviction court's findings that the petitioner's counsel was appointed to his case almost one year prior to trial or that the petitioner's counsel met with the petitioner on several occasions and tailored defense strategy to mesh with the petitioner's version of events. The petitioner has failed to demonstrate that trial counsel's performance was deficient in failing to ask for a continuance or to meet more often with the petitioner. Moreover, the petitioner presented no evidence of prejudice from any alleged deficiency. The petitioner introduced no proof that a continuance or more frequent meetings with counsel would have benefitted him in any way. Accordingly, neither argument merits relief.

The petitioner does not on appeal argue that his appellate counsel was deficient in failing to argue more vigorously that his convictions should be overturned based on the fact that the co-defendant, who had confessed to shooting one of the victims, was convicted only of lesser included offenses. We note, however, that the post-conviction court correctly characterized this argument as a challenge to the sufficiency of the evidence which had previously been determined on direct appeal.

## CONCLUSION

For the foregoing reasons, we affirm the denial of the petition for post-conviction relief.

_____
JOHN EVERETT WILLIAMS, JUDGE