IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 7, 2001 Session

## STATE OF TENNESSEE v. MICHAEL SHANE HONEYCUTT

**Appeal from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 96-B-820     Cheryl Blackburn, Judge**

---

**No. M1998-00245-SC-R11-CD - Filed September 28, 2001**

---

Michael Shane Honeycutt was convicted of aggravated child abuse; the Court of Criminal Appeals affirmed the conviction. Honeycutt contends that he was denied effective assistance of counsel due to trial counsel's failure to employ a theory of defense seeking to establish the child's mother as the perpetrator. We hold that trial counsel's performance was deficient in this regard and that this deficiency prejudiced the outcome of the case. The judgment of the Court of Criminal Appeals is therefore reversed, and this case is remanded to the trial court for a new trial.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Remanded to the Criminal Court for Davison County**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Richard McGee, Nashville, Tennessee, for appellant, Michael Shane Honeycutt.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Kim R. Helper, Assistant Attorney General, Victor S. Johnson, III, District Attorney General, Roger Moore, Assistant District Attorney General, for appellee, State of Tennessee.

### OPINION

I. Facts and Procedural History

The following is a summary of the testimony. Misty Stacey and her eleven-month-old daughter were living with Michael Shane Honeycutt, the defendant, in a Nashville apartment. On October 4, 1995, Honeycutt was keeping the child while Stacey was at work. When Stacey came home for lunch, she ate and played with the child. Shortly after she returned to work, she received a telephone call from Honeycutt that the child had been injured. He told her that while he and the child were watching television, she fell over. He picked her up and noticed blood in her mouth. She

appeared unconscious. He then shook the child to wake her up, and when she did not respond, he called 911.

The child was taken to the hospital where she was treated by Joseph Gigante, M.D. Based upon his examination of the child, Gigante determined that she had suffered two head injuries, retinal hemorrhaging, and multiple bruises on her body. In order to determine the child's medical history, Gigante talked to Honeycutt and Stacey. When Gigante asked Honeycutt about the child's injuries, he responded that the child had been sitting down playing with toys when she suddenly fell over. During Gigante's interview with Stacey, she mentioned to him "that she did shake [the child] multiple times on Monday, in a 'playful way,'" and wondered whether the shaking could have caused the child's injuries.

Gigante opined that the bruises on the child's forehead were consistent with accidents that occur when a child is learning to walk, but that the other bruises were more commonly associated with child abuse. He stated that it is possible, although not probable, that the child had suffered an aneurism.[1] He opined that the child's injuries were caused a few hours before she lost consciousness.

The child was also examined at the hospital by Jeff Creasy, M.D., a radiologist. Based upon his review of the child's records, it was his opinion that the child's injuries were sustained within the 48 hours before the call for emergency treatment. He stated that the results of the CAT scan[2] would be consistent with an aneurism, but that it was unlikely an aneurism caused the child's injuries.

At the conclusion of the trial, the jury convicted Honeycutt of aggravated child abuse. After a sentencing hearing, the trial court sentenced Honeycutt to a term of 24 years. Honeycutt filed motions for new trial. The trial court conducted a full evidentiary hearing on each of the claims Honeycutt asserted in the motions, including the claim of ineffective assistance of counsel, and, ultimately, overruled them. The trial court denied the motions for a new trial. Honeycutt appealed

---

[1] Gigante defined "aneurism" as "a dilatation of a blood vessel, where a blood vessel rather than being of normal width, is dilated in a certain area and these can sometimes burst."

[2] A CAT scan, or computerized axial tomography, involves the use of x-rays to gather "anatomical information from a cross-sectional plane of the body, presented as an image generated by a computer synthesis of x-ray transmission data obtained in may different directions through the given plane." Steadman's Medical Dictionary 1459 (5th ed. 1984).

to the Court of Criminal Appeals on the issue of ineffective assistance of counsel;[3] the court affirmed the conviction.[4]

The issue we must determine is whether Honeycutt was denied his right to effective assistance of counsel.

## II. Standard of Review

The issue whether a petitioner has been denied the effective assistance of counsel is a mixed question of law and fact. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). A trial court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Under this standard, appellate courts do not substitute their own inferences for those drawn by the trial court, and questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. Henley, 960 S.W.2d at 579. However, this Court reviews de novo the application of law to those factual findings to determine whether counsel's performance was deficient or whether the defendant was prejudiced by that deficiency. Thus, when evaluating a claim of ineffective assistance of counsel, we review the trial court's findings of fact under a de novo standard, accompanied by a presumption that the findings are correct unless the preponderance of the evidence suggests otherwise, while the trial court's conclusions of law are reviewed de novo with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001).

## III. Analysis

Article I, section 9 of the Tennessee Constitution provides, in pertinent part, "[t]hat in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel . . . ." The Sixth Amendment of the United States Constitution provides that in all criminal prosecutions, the accused shall "have the Assistance of Counsel for his defense." "These two constitutional provisions are identical in import with the result that a denial of the Sixth Amendment right to the effective assistance of counsel is simultaneously a denial of the right to be heard by counsel, as provided under the Constitution of Tennessee." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

---

[3]Claims of ineffective assistance of counsel are generally more appropriately raised in a petition for post-conviction relief rather than on direct appeal. See State v. Carruthers, 35 S.W.3d 516, 551 (Tenn. 2000); see also State v. Anderson, 835 S.W.2d 600, 606 (Tenn. Crim. App. 1992) ("Raising issues pertaining to the ineffective assistance of counsel for the first time [on direct appeal] in the appellate court is a practice fraught with peril."); cf. State v. Wilson, 31 S.W.3d 189 (Tenn. 2000) (holding that a constitutional challenge to the validity of a guilty plea should be raised and litigated in a petition for post-conviction relief rather than on direct appeal).

[4]Honeycutt also raised the following issues: (1) whether the trial court erred when it failed to instruct the jury on lesser included offenses, and (2) whether the trial court imposed an excessive sentence. State v. Honeycutt, No. M1998-00245-CCA-R3-CD, 1999 WL 1063546, at *1 (Tenn. Crim. App. Nov. 24, 1999).

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

When a claim of ineffective assistance of counsel has been raised, a convicted defendant must prove, by clear and convincing evidence,[5] that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; see also Burns, 6 S.W.3d at 461. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

With respect to deficient performance, the proper measure of attorney performance is "reasonableness" under prevailing professional norms. Id. at 688, 104 S. Ct. at 2065. This Court has recognized that the standard for "reasonableness" is "whether the advice given, or the services rendered by the attorney, are within the range of competence demanded of attorneys in criminal cases." Baxter, 523 S.W.2d at 936. The appellate court must be highly deferential and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S. Ct. 2052 (citation omitted); see also Burns, 6 S.W.3d at 462. Additionally, the reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90, 104 S. Ct. at 2065-66.

To establish prejudice, the second prong of the Strickland test, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In other words, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691, 104 S. Ct. at 2052.

We will begin by discussing the first prong of the Strickland test–deficient performance. Honeycutt contends that trial counsel failed to employ and develop a theory of defense. Specifically, Honeycutt contends that trial counsel's performance was deficient due to his failure to present evidence seeking to establish Stacey as the perpetrator. Trial counsel's theories of defense were: his was not a case of "Shaken Baby Syndrome," and Honeycutt was not the perpetrator. Trial counsel admitted in the hearing on the Motion for New Trial that he had no evidence to support the first theory. In fact, trial counsel, in his opening statement, stated that he would not deny that the

---

[5] Burns, 6 S.W.3d at 461. Pursuant to Tenn. Code Ann. § 40-30-210(f) (1997), a post-conviction petitioner seeking relief for constitutional claims is required to prove allegations of fact "by clear and convincing evidence." See id. at 461 n.5. "Although, in this instance, the claim of ineffective assistance of counsel was raised on direct appeal, the same standard should apply." Id. (citing State v. Anderson, 835 S.W.2d 600 (Tenn. Crim. App. 1992)).

child had been shaken. The State argues that trial counsel's performance was not deficient in that on cross-examination, both doctors testified to the possibility, although not probable, that the child had suffered an aneurism. This concession by the doctors, however, does not neutralize trial counsel's implication in the opening statement that the child had been shaken.

Trial counsel did nothing to develop his second theory. Trial counsel knew that only Honeycutt, Stacey, the child's grandmother, and the child's step-grandfather had access to the child during the 48-hour period in which Creasy opined the injury had been inflicted. No evidence implicated the child's grandmother or step-grandfather. Trial counsel admitted, however, that there was evidence to implicate Stacey, and the following evidence was available to him prior to trial:

1.  Stacey had access to the child during the critical period (one to two hours preceding loss of conscious).

2.  Stacey admitted to a Department of Human Services worker that she had shaken the child when the child was two days old and stated "I could just suffocate" regarding the way the child's constant crying got on her nerves.

3.  Stacey admitted to Detective Bernard that she had shaken and slapped the child.

4.  Tammy McCoy told Detective Meek that Stacey said the child got on her nerves so bad that Stacey could smother her.

5.  Stacey admitted to the detectives that she shook the child "when she was a couple days old [because] her crying got on my nerves."

Trial counsel did not question Stacey about her access to the child or her incriminating statements. He admitted that this was not a strategic decision. If trial counsel had questioned Stacey about the substance of the above statements, he could, perhaps, have offered the jury an alternative theory about how the child had been injured.[6] In light of this evidence, which likely could have led the jury

---

[6]The Court of Criminal Appeals correctly notes that much of this evidence would have been inadmissible hearsay. Even if the statements themselves could not have been admitted, however, defense counsel certainly could have questioned Stacey about the substance of the statements (in other words, whether Stacey had a history of shaking or slapping the child, whether she ever felt angry enough at the child to "suffocate" her, or whether she shook or slapped the child in the time period before the child lost consciousness). If Stacey contradicted her out-of-court statements, the statements could have been used to impeach her credibility. Even though the statements then would serve only as impeachment, not substantive, evidence, the jury still would be faced with an individual who had access to the child at the time of her injury and who had made significant, inconsistent statements whether she behaved abusively toward the child. Given the entirely circumstantial nature of the case against Honeycutt, this evidence may reasonably have swayed the jury to doubt his guilt.

to suspect that Stacey, rather than Honeycutt, committed the crime, and the lack of evidence to support trial counsel's chosen theory, we conclude that trial counsel's performance was deficient in his failure to develop the alternate theory of defense.

The second prong of the <u>Strickland</u> test requires a determination of whether trial counsel's deficient performance prejudiced the outcome of the case. The evidence against Honeycutt was entirely circumstantial.[7] The only evidence which directly linked Honeycutt to the crime was Gigante's testimony that the injury was inflicted one to two hours before the child became unconscious and Honeycutt's admission that he had access to the child during that period of time. The record also indicates, however, that Stacey had access to the child during this same time frame because she came home on her lunch break. Given the circumstantial nature of the evidence against Honeycutt, we conclude that a reasonable probability exists that the introduction of evidence implicating Stacey as the perpetrator, including her incriminating statements, may have raised a reasonable doubt in the jurors's minds as to Honeycutt's guilt. Had the jury been presented with this alternative theory, there is a reasonable probability that the result may have been different. Trial counsel's deficient performance, therefore, prejudiced the outcome of the case. Accordingly, Honeycutt's conviction is reversed, and this case is remanded to the trial court for a new trial.

## IV. Lesser-included Offenses

The resolution of the ineffective assistance of counsel issue is sufficient to resolve this appeal. In order to provide guidance to the trial court on remand, however, we proceed next to address Honeycutt's claim that the offenses of aggravated assault and reckless endangerment should be regarded as lesser-included offenses of aggravated child abuse and that the trial court erred in failing to instruct the jury regarding these offenses.

---

[7]Although, unfortunately, the actual instructions given to the jury were not preserved in the transcript of the proceedings, it appears from the proposed jury instructions included in the record that the jury was given the following instruction:

> When the evidence is made up <u>entirely of circumstantial evidence</u>, then before you would be justified in finding the defendant guilty, you must find that all the essential facts are consistent with the hypothesis of guilty, as that is to be compared with all the facts proved; <u>the facts must exclude every other reasonable theory</u> or hypothesis except that of guilt; and the facts must establish such a certainty of guilt of the defendant as to convince the mind beyond a reasonable doubt that the defendant is the one who committed the offense. It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are proved to satisfy the jury beyond a reasonable doubt of all the facts necessary to constitute the crime charged. <u>Before a verdict of guilty is justified, the circumstances, taken together, must be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion and producing in effect a moral certainty that the defendant, and no one else, committed the offense</u>.

(Emphasis added.)

This Court established the analysis for determining whether an offense is a lesser-included offense of a charged crime in State v. Burns, 6 S.W.3d 453 (Tenn. 1999).[8] Under the Burns test, an offense qualifies as a lesser-included offense if:

> (a)     all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b)     it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability; and/or (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c)     it consists of [facilitation, attempt, or solicitation] of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b) . . . .

Id. at 466-67 (Tenn. 1999).

Once it is resolved that an offense is a lesser-included offense of the charged offense, the Court then must ascertain "whether the evidence justifies a jury instruction on such lesser offense." Id. at 467. As stated in Burns, "[t]he mere existence of a lesser offense to a charged offense is not sufficient alone to warrant a charge on that offense." Id. at 468. In deciding whether the evidence supports a jury instruction on a lesser-included offense, a reviewing court must weigh the following considerations:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469. If the evidence would support a finding of guilt on the lesser offense, an error in failing to charge that lesser offense will not be held harmless merely because the evidence also supports a conviction on the greater offense. See id. at 472.

---

[8]Trial courts have a duty to instruct the jury on all lesser-included offenses of the offense charged for which the evidence would support a conviction. See State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999); State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999). At the time of trial in this case, that duty applied whether or not the defendant requested lesser-included offense instructions. Burns, 6 S.W.3d at 463.

## A. Aggravated Assault

First, Honeycutt asserts that the trial court should have instructed the jury regarding the offense of aggravated assault. Pursuant to the <u>Burns</u> test, we first compare the statutory elements of the two offenses. The offense of aggravated child abuse, codified at Tenn. Code Ann. § 39-15-402 (1999), consists of the following elements relevant to the case under submission:[9]

> (1)    Knowingly, other by accidental means;
>
> (2)    Abusing a child[10] under 18 years of age; and
>
> (3)    Either:
>
>> (a)    a deadly weapon is used; or
>>
>> (b)    the abuse causes serious bodily injury.

In comparison, the pertinent elements of aggravated assault, codified at Tenn. Code Ann. § 39-13-102 (1999), are as follows:

> (1)    Intentionally, knowingly, or recklessly
>
> (2)    Committing an assault;[11] and
>
> (3)    Either:
>
>> (a)    a deadly weapon is used; or
>>
>> (b)    the assault causes serious bodily injury.

Thus, knowing or reckless aggravated assault qualifies as a lesser-included offense of aggravated child abuse under part (a) of the <u>Burns</u> test because the elements of aggravated assault are included within the offense of aggravated child abuse. In other words, the elements of aggravated child abuse

---

[9]For the purposes of clarity and comparison, the elements of the relevant offenses set forth below have been paraphrased.

[10]Tenn. Code Ann. § 35-14-401(a) (2000) defines child abuse in pertinent part as "knowingly, other than by accidental means, [treating] a child under eighteen (18) years of age in such a manner as to inflict injury." While the elements of assault are stated using somewhat different language than that of the child abuse statute, it is clear that "treating . . . in such a manner as to inflict injury" and "[causing] bodily injury" are synonymous.

[11]The offense of assault is defined in Tenn. Code Ann. § 39-13-101(a)(1) (1999) as "[i]ntentionally, knowingly, or recklessly [causing] bodily injury to another."

consist of all the elements of knowing or reckless[12] aggravated assault, plus the additional element that the victim must be a child under 18 years of age. Intentional aggravated assault, on the other hand, would not be a lesser-included offense of aggravated child abuse under part (a) of the Burns test. Under part (b)(1) of the test, the only element which differs from the greater offense, the intentional mens rea element, does not establish "a different mental state indicating a lesser kind of culpability." Thus, on remand, if the evidence presented at trial would justify an instruction on the offense of knowing or reckless aggravated assault, a lesser-included offense instruction regarding aggravated assault should be presented to the jury. No instruction will be required, however, for intentional aggravated assault.

### B. Reckless Endangerment

We next compare the elements of reckless endangerment to the elements of aggravated child abuse to determine whether the trial court erred in failing to submit to the jury a lesser-included offense instruction on this offense. The elements of reckless endangerment, codified at Tenn. Code Ann. § 39-13-103(a) (2000), are as follows:[13]

> (1)     Recklessly engaging in conduct;
>
> (2)     Which places or may place another person in imminent danger of:
>
>   (a)     death; or
>
>   (b)     serious bodily injury.

When compared to the elements of aggravated child abuse outlined in section A above, it is apparent that part (a) of the Burns test is not satisfied because all of the elements of reckless endangerment are not included within the offense of aggravated child abuse. The reckless mens rea element of reckless endangerment is included within the knowing mens rea element of aggravated child abuse because proof of knowing conduct also serves to prove recklessness. See Tenn. Code Ann. § 39-11-301(a)(2). Reckless endangerment, however, contains a differing harm element (conduct which places or may place another person in imminent danger rather than a requirement of serious bodily injury). Therefore, if reckless endangerment is to be a lesser-included offense of aggravated child abuse, the differing element must satisfy part (b)(2) of the Burns test. Because conduct which places another person in imminent danger would contemplate a less serious harm than conduct which actually causes serious bodily injury, part (b)(2) of the test is satisfied. Therefore, reckless endangerment is a lesser-included offense of aggravated child abuse, and if the evidence at trial on

---

[12]"When recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly." Tenn. Code Ann. § 39-11-301(a)(2) (2000).

[13]For the purposes of clarity and comparison, the elements of the offense set forth below have been paraphrased.

remand would justify an instruction for reckless endangerment, a lesser-included offense instruction regarding that offense should be submitted to the jury.

## V.  Conclusion

We conclude that trial counsel's performance was deficient in failing to present evidence to establish Stacey as the perpetrator.  Given the circumstantial nature of the evidence and the available evidence to support the alternative theory of defense, we hold that but for trial counsel's deficient performance there exists a reasonable probability that the outcome of the case may have been different.  We therefore conclude that Honeycutt was denied effective assistance of counsel.  The decision of the Court of Criminal Appeals is reversed, and this case is remanded to the trial court for a new trial.

_____
ADOLPHO A. BIRCH, JR., JUSTICE