# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 26, 2013

## BRENT A. BLYE vs. STATE OF TENESSEE

**Direct Appeal from the Circuit Court for Sullivan County**
**No. C59756      R. Jerry Beck, Judge**

---

**No. E2012-02626-CCA-R3-PC Filed August 5, 2013**

---

The petitioner, Brent A. Blye, appeals the denial of his petition for post-conviction relief. In this case, the petitioner was convicted by a jury of possession with intent to sell 26 grams or more of cocaine, a Class C felony, possession of a Schedule III controlled substance, a Class A misdemeanor, and possession of less that .05 ounces of marijuana, a Class A misdemeanor. Following the verdict, the parties reached an agreement on sentencing whereby the petitioner would serve twelve years as a Range II offender on the cocaine conviction and eleven months and twenty-nine days on each of the misdemeanors. As part of the same sentencing agreement, the petitioner entered guilty pleas and was sentenced in three unrelated cases at the same time. On appeal, he contends that the post-conviction court erred in denying him relief because he was denied his right to the effective assistance of counsel at trial. Specifically, he contends that trial counsel was ineffective for: (1) failing to file a timely motion for new trial; and (2) failing to develop a theory of defense at trial arguing for a lesser-included offense when evidence was available to support such a defense. Following review of the record, we remand the case to the post-conviction for a determination of whether a delayed appeal is proper based upon deficient performance in trial counsel's failing to file a motion for new trial. The denial of post-conviction relief is affirmed in all other aspects.

**Tenn. R. App. P. 3 Appeal as of Right; Remanded in Part, Affirmed in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Kenneth E. Hill, Kingsport, Tennessee, for the appellant, Brent A. Blye.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney

General; Barry P. Staubus, District Attorney General; and William B. Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History and Factual Background

The facts underlying the petitioner's convictions in this case, as recited by this court on direct appeal, are as follows:

> Taken in the light most favorable to the State, the evidence reflects that these convictions stem from the arrest of the [petitioner] for the charge of robbery in Case Number S51,239. [footnote omitted]. On November 12, 2004, Detective Jason Grant Bellamy of the Kingsport Police Department, accompanied by Detective Mark Mason and Officer Jeff Kendrick, went to the Comfort Inn in Kingsport, Tennessee to look for the [petitioner]. When they arrived at the hotel, Detective Bellamy asked the staff if the [petitioner] had rented a room. When the staff told him that the [petitioner] did not have a room at the hotel, he asked if Savonna Collier, who had been seen with the [petitioner] and identified as his girlfriend, had rented a room. They learned that Ms. Collier had rented room 264.

> Detective Bellamy and the other officers went to room 264. Ms. Collier answered the door, and after they identified themselves, Ms. Collier allowed them to come inside. They found the [petitioner] asleep on the bed closest to the door, wearing only a thin shirt, jeans, and socks. They arrested the [petitioner]. After the [petitioner] was taken from the room, Ms. Collier asked Detective Bellamy if he would let the [petitioner] have his jacket, which had been underneath the [petitioner] on the bed. Detective Bellamy retrieved the jacket from the bed and searched it. Inside the jacket, he found three blue pills labeled "Watson 5-4-0" and a prescription bottle filled with what appeared to be crack cocaine. Detective Bellamy collected the evidence and asked Ms. Collier to accompany him to the police station. Ms. Collier complied, and by that time, the [petitioner] had already left in a patrol car. Once they arrived at the police station, Detective Bellamy gave the items retrieved from the jacket to Detective Sean Chambers, who identified the contents of the pill bottle as cocaine. Detective Chambers spoke with Ms. Collier, who gave him the key to the hotel room.

> Detective Chambers went to the hotel with Detective Sergeant Dale

2

Phipps and Detective Steve Hammonds. They searched Ms. Collier's room and found several items in the drawer of the table that was located between the two beds in the room. Inside the drawer, Detective Chambers found a plastic bag that contained approximately six other plastic bags. In two bags, he found plant material. In three bags, he found a white substance. In another bag, he found tan-colored rocks. He also found "cash in the amount of $612" and two receipts. Both receipts referenced the [petitioner]. In the storage area underneath the drawer of the table, Detective Bellamy found several tan-colored rocks on top of a Comfort Inn notepad. On the bed closest to the door, he found a cigarette box that contained a blue pill, labeled "Watson 5-4-0" and a small amount of plant material. He found a blue shirt on the same bed, and in the left pocket of the shirt, he found a hand-rolled cigarette. He continued to search the rest of the room but did not find anything else. The room did not contain any baggage or clothing other than the blue shirt found on the bed. The room also did not contain any crack pipes, straws, or syringes that may have been used to ingest the drugs found in the room. Detective Chambers later learned that a razorblade had been found on the [petitioner]. Detective Chambers then went to the hotel office and retrieved a copy of the registration form, which showed that the room was registered to Ms. Collier and that two individuals were staying in the room.

According to Detective Chambers, the approximate value of the cocaine found in the hotel room was $3,000. His estimate was based on the weight of the cocaine and the "going price in the city of Kingsport." He stated that the crack rocks that were found in the room would normally be sold as "individual rocks" after they were "broken down into smaller quantities. He also stated that the crack rocks could be sold as they were found.

The rocks found in the pill bottle contained cocaine base and weighed 16.84 grams. The white powder found in the three bags contained cocaine and weighed 6.93 grams. The rocks found in the other plastic bag contained cocaine base and weighed 1.79 grams, .44 grams, and 4.36 grams. The rocks found in the storage area of the bedside table contained cocaine base and weighed .39 grams. Thus, there was a total of 23.8 grams of crack rocks, and 6.93 grams of powder cocaine. The plant material was tested and found to contain marijuana, and the total weight of the plant material was 5.9 grams. The blue pills were tested and found to contain Dihydrocodeinone, a Schedule III drug.

*State v. Brent Allen Blye*, No. E2008-00976-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS

106 (Tenn. Crim. App. at Knoxville, Feb. 14, 2011). For the acts in this case, case number E50,833, the petitioner was convicted by a jury of possession with intent to sell twenty-six grams or more of cocaine, possession of a Schedule III controlled substances, and possession of less than .5 ounces of marijuana. *Id*. at *1. After the verdict in this case, an agreement was reached between the parties whereby the petitioner would serve twelve years as a Range II multiple offender. *Id*. at *3. He was also sentenced as part of the agreement to two terms of eleven month and twenty-nine day for the misdemeanor convictions. *Id*. As part of the same agreement, the petitioner pled guilty and was sentenced in three unrelated cases, those being case numbers S46,736, S48,629, and S51,239. Based upon the imposition of concurrent sentencing, the total effective sentence for all cases was thirty years. *Id*. at *2. Judgment in case number S50,833 was entered by the trial court on April 27, 2006. *Id*. at *5. Following entry of judgment, several post-trial motions were filed. According to this court on direct appeal,

> The [petitioner] filed two pro se motions of May 15, 2006 that referenced all of the [petitioner's] case numbers. The first motion was entitled, "Motion to Verify That Plea Agreement That was Held On April 24, 2006 is Correct?" The second motion was entitled, "Motion to Withdrawal of Plea of Guilty (If the Judgment Isn't What [the petitioner] Agreed." The [petitioner] then filed another pro se motion entitled, "Motion for New Trial" on August 2, 2006. He filed another motion entitled, "Motion for New Trial" on November 9, 2006, and through counsel, he filed an amended motion for new trial on March 10, 2008. Defense counsel also filed a motion requesting that the motions filed on May 15, 2006 be considered as a motion for new trial in Case Number S50,833. On March 14, 2008, defense counsel filed another amended motion for new trial.

*Id*. At a motion for new trial hearing on April 9, 2008, the trial court found that all the motions for new trial filed were untimely, despite the petitioner's urging to consider the May 15, 2006 pro se motions as motions for new trials. *Id*. at *6. The court concluded that the two pro se motions could not be construed as a motion for new trial. *Id*.

Multiple notices of appeal were filed by the petitioner following the order denying the motion for new trial as untimely. *Id*. The appeal to this court included case numbers S46,736; S48,639; S50,833 (the case of instant concern to us on this appeal); and S51,239. On appeal, this court reviewed the following issues: (1) whether his pro se motions should have been considered as a motion for new trial in Case Number S50,833; (2) whether the evidence presented at trial was insufficient to support his convictions in case S50,833; (3) whether the trial court erred in denying his motion to withdraw his guilty pleas in the three other cases; (4) whether his right to a speedy trial was violated in Case Number S46,736; (5)

4

whether the trial court erred in sentencing him; and (6) whether the trial judge who sentenced him in all four cases, not the same judge who presided over his trial in case number S50,833, should have recused herself. *Id*. at *2.

After review, this court concluded that neither of the pro se motions filed by the petitioner on May 15, 2006, could appropriately be construed as a "motion for new trial" in Case Number S50,833 because the motions did not discuss his convictions in that case other than a notation on the top of the motions, which included all four case numbers, and a reference to the sentence he received pursuant to the agreement by the parties. *Id*. at *7. No where in the substance of either motion was Case Number S50,833 mentioned. This court then affirmed the trial court's determinations that the motion for new trial in Case Number S50,833 was not timely filed. *Id*. As a result, the court concluded that all issues other than sufficiency of the evidence with regard to case S50,833 were waived. *Id*. at *8. The court reviewed the issue and concluded that the evidence was sufficient. *Id*. at *19. The court did address the issues relating to the petitioner's other cases and concluded that: (1) the record supported the trial court's decision to deny the petitioner's motion to withdraw his pleas; *Id*. at *27, (2) the petitioner had waived his right to challenge a violation of his right to a speedy trial by pleading guilty in Case Number S46,736; *Id*. at *29, (3) his sentencing challenges had no merit because he pled guilty pursuant to an agreement by the parties in all four cases; *Id*. at 30, and (4) recusal of the sentencing judge was not warranted on the facts in case S46,736; *Id*. at *35. This court affirmed the trial court in all respects, except remanded for entry of corrected judgments to reflect the actual sentence which was announced at the sentencing hearing. Application for permission to appeal was denied by the Tennessee Supreme Court on May 25, 2011.

Thereafter, on August 22, 2011, the petitioner filed a pro se petition for post-conviction relief in Case Number S50,833 alleging that he was denied his right to the effective assistance of counsel. An amended petition was filed following the appointment of counsel. Among other grounds, the petition alleged that trial counsel was ineffective for failing to file a timely motion for new trial and that he failed to pursue a viable theory of defense. A hearing was held on the matter at which only trial counsel and the petitioner testified.

Trial counsel testified that he represented the petitioner in case number S50,833 and that the petitioner was found guilty as charged following a jury trial. According to trial counsel, he and the petitioner never discussed filing an appeal in the case, and he file no motion for new trial. Trial counsel testified that he also represented the petitioner in three separate cases during the guilty plea and sentencing. Part of that agreement was also an agreed-to sentence in case number S50,833. The day after sentencing in all four cases, the petitioner filed a pro se motion to set aside the plea. Trial counsel testified that he believed,

5

as a result of that pro se motion, that the sentences in all cases were not final; thus, there was no need to file any motion for new trial at the time.

Trial counsel recalled that the motion to set aside the plea was heard before the court, and he was called as a witness. He stated that:

> . . . [he] was placed once again in this chair and impeached by two other attorneys. I don't recall their names. And I told them the same thing I'm telling you today, is I didn't feel that the sentence was final. That's why I didn't file.

> And then when Your Honor ruled against his motion to set aside the plea, that's when the sentence was final. And at that point, being impeached by two other attorneys and him filing a pro se motion, I didn't feel I was his attorney or - or owed him duty to do that. Never spoke to him again.

Trial counsel stated that he was aware that the two attorneys subsequently representing the petitioner had filed other motions in the case, and he assumed they would also be filing the motion for new trial. Trial counsel testified that he was aware that the petitioner did want to file a motion for new trial, he just believed that it was no longer his responsibility to do so. However, he acknowledged that he did not seek to be removed from the case and that he was not aware of any court order removing him.

According to trial counsel, much of the confusion over ongoing duties was caused by the petitioner's pro se filing of the motion to set aside the guilty pleas. When he began his representation of the petitioner, trial counsel was aware that the petitioner had filed several pro se motions in his case. He testified that he specifically informed the petitioner that if he continued to file pro se motions, then he would not be allowed to represent the petitioner further.

Trial counsel further testified that he did not speak with the petitioner regarding pursuing a defense theory of simple possession, although he was aware that Ms. Collier had received a settlement from an automobile accident. According to trial counsel, he explained that the trial court would inform the jury that "you must exclude all alternate hypothes[e]s other than that of guilt." He then asked the petitioner for a possible alternate hypotheses to pursue at trial. The petitioner responded that he was aware that Ms. Collier had some pending prostitution charges, so the alternative theory they chose to pursue was that the petitioner was only there doing business with Ms. Collier and that the drugs were actually hers. At the time they proceeded to trial, both the petitioner and trial counsel believed that Ms. Collier would admit to her prostitution activity on the stand because Ms. Collier's family

6

had told the petitioner that she would do so. That in addition to the fact that the room was registered in her name and Ms. Collier had given the jacket to the petitioner before the drugs were found in the jacket was the evidence they planned to present in support of their defense. However, when called to testify at a jury out hearing, Ms. Collier invoked her Fifth Amendment right and refused to acknowledge the prostitution charges. Trial counsel was not allowed to impeach her credibility with the prior charges because they had not resulted in convictions. Thus, the jury never heard any evidence related to the prostitution cases.

Trial counsel testified that he was aware that Ms. Collier had received a settlement check in the amount of $11,457.02 on November 4, 2004. He was also aware who the attorney was that had represented her in the automobile accident case. According to trial counsel, he and the petitioner had discussed this prior to trial and decided not to present this evidence because trial counsel believed it hurt their theory of defense regarding the prostitution charges. He explained that Ms. Collier would be seen as less likely to be engaged in prostitution if she had a large sum of cash. Trial counsel testified that he saw no need to call Ms. Collier's settlement attorney, as it in no way aided their theory of defense. He acknowledged that they were "left hanging" when Ms. Collier refused to testify as they had been assured she would.

Nonetheless, trial counsel specifically testified that he did not believe that the defense of simple possession was a viable option, particularly in light of the amount of drugs found in the room. Trial counsel testified that he did recall some evidence being presented at trial that crack pipes were found in the room; however, he still did not consider the simple possession defense viable because there was "sixty times" the amount of drugs found in the room that would be necessary to establish a charge of simple possession.

Contrary to trial counsel, the petitioner testified that he informed trial counsel immediately after he was convicted that he wanted an appeal filed in his case. The petitioner stated that trial counsel told him that he would file it for him. According to the petitioner, he and trial counsel also had a discussion regarding whether he wanted to appeal after entry of the plea agreement and sentencing. The petitioner recalled no discussion with trial counsel telling him not to file pro se motions. He testified that he filed the pro se motion to set aside the guilty plea in the case because he felt that the pleas were wrong in terms of sentencing considerations and that trial counsel was not doing his job and representing him effectively.

With regard to the theory of defense, the petitioner testified that he wanted trial counsel to call Ms. Collier's settlement attorney, Mr. Moody, to testify at trial. The petitioner claimed that Mr. Moody should have been subpoenaed to testify that Ms. Collier had received the large settlement just prior to these offenses. He testified that trial counsel was

7

ineffective in not doing so because it precluded him for utilizing an alternate theory of defense. He testified that the information, along with the fact that crack pipes were found in the motel room, would have supported to a defense of simple possession. The petitioner also faulted trial counsel for making the decision regarding which theory of defense to pursue himself.

According to the petitioner, what actually occurred was that Ms. Collier had purchased the drugs with part of the money from her settlement and that the two were together in the motel room smoking it. The petitioner also acknowledged that they were using marijuana and pills as well. The petitioner adamantly denied that the two were selling the drugs. The petitioner had no explanation as to why Ms. Collier had purchased such a large quantity of cocaine at one time.

After hearing the evidence presented, the post-conviction court denied the petitioner relief. This timely appeal has followed.

**Analysis**

On appeal, the petitioner raises the single issue of ineffective assistance of counsel. Specifically, he contends that trial counsel was ineffective by: (1) failing to file a timely motion for new trial; and (2) failing to develop a theory of defense regarding the lesser offense of simple possession when evidence was present to support such a theory. In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of

8

counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn.

2001).

## I. Failure to File a Timely Motion for New Trial/Denial of Effective Appellate Review

As his first assertion, the petition contends that trial counsel was ineffective for failing to file a timely motion for new trial in the case. He asserts that the failure of trial counsel to do so deprived him of complete appellate review of his case. He urges this court to remand to the trial court with instruction to "grant a motion for new trial" because his right to a direct appeal has been unconstitutionally denied.

The petitioner relies upon the cases of *Wallace v. State*, 121 S.W.3d 652 (Tenn. 2003) and *Earles v. State*, No. M2003-01741-CCA-R3-CD, 2005 Tenn. Crim. App. Lexis 367 (Tenn. Crim. App., at Nashville, Apr. 19, 2005), to support his argument that he should have been granted relief. We agree with the petitioner that the *Wallace* case is very similar to his and controls the outcome of his case. In *Wallace*, the defendant was convicted of first degree murder following a jury trial. *Wallace*, 121 S.W.3d at 654. The defendant had retained counsel to represent him during his trial, with an agreement in place that trial counsel would not be responsible for handing any potential appeals. *Id*. After trial, counsel sent the defendant a letter instructing him how to prepare a motion for new trial and denoting potential issues. *Id*. at 654-55. However, trial counsel never filed a motion to withdraw from the case. *Id*. at 655. Because of this continued representation of record, the trial court refused to consider the defendant's timely pro se motion for new trial. *Id*. Although trial counsel later did file a motion for new trial, it was not granted based upon its untimeliness. *Id*. On appeal, this court concluded that because there was no timely motion for new trial filed in the case, all issues on appeal were waived except for sufficiency of the evidence. *Id*.

The defendant in *Wallace* later filed a petition for post-conviction relief alleging that his original trial counsel had been ineffective for failing to file a timely motion for new trial and that he had been prejudiced because multiple issues had not been reviewed by an appellate court. *Id*. After being granted a delayed appeal by the trial court, a decision which was reversed by this court based upon a finding of a lack of prejudice, the Tennessee Supreme Court reviewed the case and granted relief in the form of a delayed appeal. *Id*. at 660.

Tennessee Code Annotated section 40-30-112 (2010) sets forth the procedure when a petitioner is unconstitutionally denied an appeal. The statute provides that:

> (a) When the trial judge conducting a hearing pursuant to this part finds that the petitioner was denied the right to an appeal from the original conviction in violation of the Constitution of the United States or the Constitution of

10

Tennessee and that there is an adequate record of the original trial proceeding available for review, the judge can:

(1) If a transcript was filed, grant a delayed appeal;

(2) If, in the original proceedings, a motion for new trial was filed and overruled but no transcript was filed, authorize the filing of the transcript in the convicting court; or

(3) If no motion for new trial was filed in the original proceeding, authorize a motion to be made before the original court within thirty (30) days. The motion shall be disposed of by the original trial court as if the motion had been filed under authority of Rule 50 of the Rules of Civil Procedure.

T.C.A. § 40-30-113. Additionally, Tennessee Code Annotated section 40-30-111(a) provides, in part:

If the court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable, including a finding that trial counsel was ineffective on direct appeal, the court shall vacate and set aside the judgment or order a delayed appeal as provided in this part and shall enter an appropriate order.

Thus, as noted in our supreme court's opinion in *Wallace*, "these statutes clearly indicate that a defendant may receive a delayed appeal where there has been a denial of the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution." *Wallace*, 121 S.W.3d at 656. Thus, we are somewhat perplexed by the post-conviction court's finding in this case that it is "beyond this Court's powers to grant a delayed appeal and this Court so finds." The post-conviction court appeared to be under the impression that a delayed appeal was foreclosed because this court had reviewed the sufficiency issue on appeal.

In order to establish a constitutional violation of this nature, the petitioner must satisfy both prongs of the aforementioned *Strickland* analysis. *Id*. at 656-57. With regard to the first prong, that the conduct of counsel fell "below prevailing professional norms, the *Wallace* court concluded that counsel's failure to timely file a motion for new trial in the court or to withdraw from representation did in fact establish deficient performance. *Id*. at 657. The court concluded that "trial counsel's failure to file a timely motion for new trial, despite the clear desire of the defendant to do so, constitutes deficient performance notwithstanding the retainer agreement that purported to limit counsel's representation to trial work." The court continued, stating that trial counsel should taken the "necessary steps to preserve post-trial remedies, including the filing of the motion for new trial, [which] are clearly responsibilities

11

of counsel[.]" *Id*.

Turning to the deficiency prong in this case, we are also forced to conclude that the record establishes deficient performance. There is no dispute that a timely motion for new trial was not filed by trial counsel in this case. It was so determined on direct appeal by this court, and all issues were determined to be waived because of that late filing. Trial counsel himself acknowledges that he did not file a timely motion for new trial. The State urges us to consider the deficiency issue in light of the complications created "by the lack of clarity in the record concerning when [trial counsel's] representation of the petitioner ended." While we do acknowledge that trial counsel did offer testimony that he thought he was excused from filing any additional motions by the petitioner's own pro se filings, as well as a hearing on a separate matter at which the petitioner appeared to be represented by other counsel, that cannot excuse the failure. Trial counsel also testified that he did not seek formal removal as counsel of record in the case. Trial counsel's belief that judgments were not final based upon the filing of petitioner's pro se motion to set aside the plea also does not excuse the failure. The proper procedure was to ensure that he was either removed from the case or to ensure that a motion for new trial was filed if the petitioner wanted to pursue an appeal. While we acknowledge that complications did in fact arise in this case, the final result of the actions, or inactions, were that no timely motion for new trial was filed in the case, and this court reviewed only for sufficiency of the evidence on appeal.

Turning to the issue of prejudice, we must again look to our supreme court's opinion in *Wallace*. The court specifically determined that "the prejudice prong of the analysis can [not] be resolved simply by reasoning that [the petitioner] had direct review on the sufficiency of the evidence alone." *Id*. at 658. The court also held that, under the circumstances of the *Wallace* case, the defendant was not required to demonstrate actual prejudice from his lawyer's deficient performance. *Id*. Rather, "counsel's deficient performance was . . . presumptively prejudicial" because

> counsel's abandonment of his client at such a critical stage of the proceedings resulted in the failure to preserve and pursue the available post-trial remedies and the complete failure to subject the State to the adversarial appellate process. Counsel's deficient performance was, therefore, presumptively prejudicial and supported the trial court's grant of a delayed appeal under Tennessee Code Annotated section 40-30-113.

*Id*. (citations omitted). The court recognized that "the key issue is the failure of trial counsel to file the specified pleading resulting in the defendant being deprived of *complete* appellate review on direct appeal." *Id*. at 659 (emphasis added). Thus, the court concluded, "as a direct result of counsel's ineffective assistance, the defendant was procedurally barred from

pursuing issues on appeal, and the State's case was not subjected to adversarial scrutiny upon appeal." *Id*. at 660.

However, the court rejected a per se rule regarding a trial lawyer's failure to file a motion for new trial. Rather, in order to be entitled to relief, "a petitioner in a post-conviction proceeding must establish that he or she intended to file a motion for new trial and that but for the deficient representation of counsel, a motion for new trial would have been filed raising issues in addition to sufficiency of the evidence." *Id*. at 659. The court stated that "[t]his rule protects a defendant's constitutional rights to effective counsel, while preventing petitioners from pursuing untimely direct appeals in cases where they have in fact received effective assistance of counsel in connection with post-trial procedure." *Id*.

Thus, turning to the case before us, we must determine whether the petitioner established that, absent the deficient performance: (1) he intended to file a motion for new trial; and (2) if he would have raised additional issues other than sufficiency of the evidence. While citing to the relevant language from *Wallace* and *Earls* in his brief, the petitioner essentially makes no argument with regard to these two factors which must be shown. He recognizes that this court applied these two factors in *Earls*, and that it resulted in a remand of the case to the trial court to "determine . . . whether the defendant would have raised any issues in addition to sufficiency of the evidence, and if so, the defendant must be granted a delayed appeal, with the opportunity to first file a delayed motion for a new trial." *Id*. at 16. However, he advances no argument as to how his case satisfies those same requirements.

Nonetheless, we glean from the record that the petitioner has established that he did in fact intend for a motion for new trial to be filed. In fact, there appears to be little dispute of that issue whatsoever. The petitioner testified that he wanted such a motion filed, filed motions pro se, and had counsel file motions with the court at some point during the representation. Unfortunately, none of those motions complied with strict deadlines for filing. Trial counsel even testified that he was aware that the petitioner wanted a motion for new trial filed, he just did not believe that it was his responsibility to file the motion. Thus, we conclude that the proof adduced at the post-conviction hearing indicates by clear and convincing evidence that the petitioner intended to file a motion for new trial.

We next turn to the question of whether the record establishes that the petitioner would have included issues other than the sufficiency of the evidence in the motion for new trial. Again, the petitioner's brief is silent as to this issue. The State acknowledges that in both his pro se and amended petitions for relief, the petitioner references several issues which he wanted to raise on appeal. The State also points out that the petitioner asserts that he raised twelve issues in the initial direct appeal of his case in hopes that this court would review them despite the untimely filing of the motion for new trial. While the court's direct

13

appeal opinion does not identify twelve distinct issues, it does state the petitioner "also raises several issues that are unrelated to the sufficiency of the convicting evidence." The opinion does reference three specific issues which was alleged as error on direct appeal: (1) evidence should have been suppressed based on lack of a search warrant to search the motel room; (2) inadmissible hearsay was admitted; and (3) opinion testimony should not have been admitted However, no evidence was presented at the post-conviction hearing regarding issues that would have been raised.

.       The State appears to argue that the petitioner's failure to establish specifically what the issues would have been precluded relief. The State asserts that strict proof was demanded in the answer to the post-conviction petition and at the hearing of the petitioner's claim concerning the motion for new trial. They contend that he presented no proof "through his own testimony or that of [trial counsel] that he would have raised issues on appeal in additional to sufficiency of the evidence. Accordingly, [it is contended that] the petitioner has failed to prove his factual allegations by clear and convincing evidence" as is the required burden in post-conviction proceedings.

We do acknowledge some merit to the State's. While the petitioner testified that he requested that a motion for new trial be filed and an appeal taken of the case, specific issues to be addressed or appealed were not included at the hearing. In fact, the issue does not appear to have been addressed whatsoever. However, we cannot ignore the remarks made in the petition for relief raising specific issues, which incidently were not waived at the hearing or determined by the post-conviction court. Nor can we ignore this court's own opinion which denotes three issues which the petitioner attempted to have reviewed on direct appeal. Our reading of the record supports a finding that the record does in fact establish that the petitioner intended to seek appellate review on other issues besides sufficiency of the evidence.

Moreover, we are concerned in the case that the post-conviction court proceeded to determine the petition while under the impression that it was without jurisdiction to grant a delayed appeal. Thus, the actual issues have not been determined by the post-conviction court. No findings of fact were made with regard to any of the *Wallace* factors. While the record, in our opinion, appears somewhat clear that the factors were established, this court does not have the authority to make findings of fact because our jurisdiction is appellate only. *See* Tenn. Code Ann. § 16-5-108(a). That being said, we believe that the proper procedure in this instance is to remand the case to the post-conviction with instruction to determine whether, but for counsel's deficient performance, a motion for new trial would have been filed raising issues in addition to sufficiency of the evidence. If the post-conviction court so determines, it must grant the petitioner a delayed appeal, with the opportunity to first file a delayed motion for new trial. *See Ricky Lynn Earls*, 2005 Tenn. Crim. App. Lexis 367 at

14

*15-16.

## II.  Failing to Pursue a Different Defense Strategy[1]

The petitioner next contends that trial counsel was ineffective for failing to employee a theory of defense of a lesser included offense, specifically simple possession.  According to the petitioner's argument, he was "denied the right to effective assistance of counsel because trial counsel had evidence supporting a theory of Simple Possession/Casual Exchange, a lesser included offense . . . , yet proceeded throughout trial on a theory of which the defense was unable and did not introduce any evidence of innocence or lack of guilt as to the charged offense."

With regard to this issue, the post-conviction court made various relevant findings on the record:

> **Issue No. 4**: The petitioner stated that [trial counsel] was ineffective because he did not call Attorney E.G. Moody . . . .
>
> Attorney Moody supplied to the court a sworn statement dated October 23, 2012, that he had settled a civil tort suit for Savonna Collier, just before the defendant Collier's and petitioner[']s arrest in 2005, where she [Collier] received several thousand dollars.
>
> Petitioner stated that this would have proved that Collier would have had money to buy the cocaine.
>
> **Finding No. 4**: Considering that drugs were found in the petitioner's jacket, that Collier and petitioner were boyfriend girlfriend, they shared a hotel room at the time of the arrest, that possession of drugs can be sole or joint, this fact would not entitle the petitioner  to post-conviction relief.

---

[1]Review of this issue is appropriate at this time because when a petitioner appeals a post-conviction court's denial of a delayed appeal pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, this court shall "resolve this issue along with any other issues raised in the post-conviction appeal;" should this court "grant a delayed appeal, the post-conviction appeal shall not be stayed."  Tenn. R. Sup. Cr. 28, § 9(D)(2)(a).  We note that in proceeding this way, if a delayed appeal is granted by the post-conviction court, the petitioner will not be allowed to amend or refile a new post-conviction petition regarding any issues which might arise during that delayed appeal.

15

. . . .

**Issue No. 6**: The petitioner contends that a crack pipe was found in the hotel by the police but [trial counsel] did not develop that at the jury trial and as a result trial counsel was ineffective.

The petitioner alleges that the presence of the crack pipe would have been a theory of defense to establish that the cocaine and other drugs were only possessed to allow personal use, not sale and/or delivery.

[Trial counsel] says he discussed this with the petitioner and advised that " . . . he [didn't] think a jury would go along with 30 - around 30 grams of drugs as for personal use." . . .

**Finding No. 6**: It appears that trial counsel and petitioner discussed trial strategy. The decision does not appeal to be unreasonable. Trial Counsel was not ineffective considering there was more than 26 grams of cocaine.

The petitioner relies heavily upon the case of *State v. Honeycutt*, 54 S.W.3d 762 (2001). In that case, the defendant was charged with aggravated child abuse of his girlfriend's child. Apparently, trial counsel had two theories of defense: that it was not "Shaken Baby Syndrome" and that defendant was not the perpetrator. *Id*. at 768. At the motion for new trial, defense counsel admitted that he had no evidence to support the first theory of defense and, further, did nothing to develop the second theory of defense despite possessing evidence supporting it, specifically that: (1) the defendant's girlfriend had access to the child during the critical period; (2) defendant's girlfriend admitted to a Department of Human Services worker that she had shaken the child when the child was two days old and stated "I could just suffocate" regarding the way the child's constant crying got on her nerves; (3) defendant's girlfriend admitted to a detective that she had shaken and slapped the child; (4) the child's maternal grandmother, told a detective that defendant's girlfriend said the child go on her nerves so bad that she could smother the child; and (5) defendant's girlfriend admitted to detectives that she shook the child "when it was a couple days old because her crying got on her nerves." *Id*. In that case, the court found that the defendant had met his burden with regards to the first prong of the *Strickland* test because it was established that trial counsel did not question the defendant's girlfriend on her access to the child nor her incriminating statements. Specifically, the court said that

"[i]f trial counsel had questioned [defendant's girlfriend] about the substance of the above statements, he could, perhaps, have offered the jury an alternative theory about how the child had been injured." In light of this evidence, which

16

likely could have led the jury to suspect [defendant's girlfriend], rather than [the defendant], committed the crime, and the lack of evidence to support trial counsel's chosen theory, [the Court] conclude[d] that trial counsel's performance was deficient in his failure to develop the alternate theory of defense.

*Id*. at 768-69. The court also concluded that because the nature of the evidence against the defendant was entirely circumstantial and that the evidence directly linking defendant to the crime was an expert's testimony estimating the time of the injuries and the defendant's admission that he had contact with the child during that period. However, the Court also noted the defendant's girlfriend also had access during the same time-frame. As such, the Court concluded that the prejudice prong of the claim was also established. *Id*.

The petitioner contends that this case is analogous to *Honeycutt* and that he should be given a new trial. He specifically faults trial counsel for choosing to proceed to trial under a theory of defense for which there was no supporting evidence, *i.e.* that the petitioner was in the motel room procurring the services of Ms. Collier as a prostitute. He points to trial counsel's testimony that the issue of prostitution was not raised in front of the jury at all. The petitioner believes that trial counsel did have evidence supporting the theory that the petitioner and Ms. Collier were using as opposed to selling the drug, which would lend to a defense of simple possession/casual exchange. He points to the evidence that crack pipes were found in the room and that the money to obtain the drugs came from Ms. Collier's settlement. The petitioner contends that "[g]iven the evidence available to trial counsel for use at trial that would support a simple possession/casual exchange defense, trial counsel's performance was deficient in his failure to develop the alternate theory of defense." He further asserts that "it is reasonable to argue that but for trial counsel's failure to put forth any evidence the result of the jury verdict would have been different."

However, we are unable to agree with the petitioner's contentions. Following review, we conclude nothing in the record preponderates against the post-conviction court's findings. Trial counsel testified that the decision was made to pursue a defense that the drugs found in the hotel belonged to Ms. Collier. He testified that he intended to present evidence that the motel room was solely in her name, she was alone when she rented the room, and that she was the one who handed the jacket with drugs inside it to the petitioner. He intended to further the defense that the drugs were not the petitioner's by presenting evidence that Ms. Collier was working out of the room as a prostitute and that the petitioner was there to procure her services. Trial counsel testified that during preparation for and the actual trial, he and the petitioner were both under the impression that Ms. Collier was going to acknowledge prior pending prostitution charges against her, a fact that was learned from Ms. Collier's family. From this testimony, we must conclude, as did the post-conviction court

that this was a strategic decision made after investigation and consultation with the petitioner. Considering the facts of the case as they were known to trial counsel, it was a reasonable defense strategy to pursue. The fact that Ms. Collier did not comply and that the strategy was not successful does not by itself establish that trial counsel was deficient in pursuing said strategy. *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011).

Trial counsel was also specific in his testimony that he did not consider the defense strategy attempting to establish simple possession to be a viable one based upon the facts of this case. This conclusion was based primarily upon the large quantity of drugs which were found in the hotel room. Trial counsel testified that he was aware that the jury would be instructed that they were allowed to infer intent to sell based upon the amount of cocaine. He specifically at the post-conviction hearing that the amount of cocaine found was "60 times" more than the amount required to establish a charge of simple possession. According to trial counsel, this information was shared and discussed with the petitioner.

Trial counsel also testified that he did not consider using this strategy of defense because it would conflict with the theory which had been chosen to be presented at trial. A theory of simple possession was simply not consistent with the theory that the petitioner had no ownership interest in the drugs and was simply visiting Ms. Collier for prostitution services. As noted above, based upon the evidence as trial counsel and the petitioner believed it to be, it was a reasonable decision to chose to pursue that theory. Thus, we cannot conclude that trial counsel was deficient for choosing a single, reasonable defense theory to the exclusion of another plausible, but inconsistent theory. *See Felts*, 354 S.W.3d at 281.

Although not necessary to our review, we note that we agree with the State in its assertion that the petitioner also failed to establish the prejudice prong of his claim. We cannot conclude that a reasonable probability exists that the theory of simple possession would have yielded better results for the petitioner at trial. The amount of drugs, as well as the general factual scenario of the case, preclude us from reaching such a conclusion. The petitioner has failed to carry his burden in this case and is, thus, entitled to no relief.

## CONCLUSION

The case is remanded to the post-conviction court to make a determination on the issue of the motion for new trial as referenced in this opinion. The denial of post-conviction relief is affirmed in all other aspects.

_____
JOHN EVERETT WILLIAMS, JUDGE

18